DOMENGEAUX, Judge.
This proceeding arose as the result of events which transpired during the corporate dissolution of L.G. Seale & Company, Inc. L.G. Seale & Company, Inc. (Seale & Company), prior to its dissolution on October 11, 1983, was an agricultural equipment and repair parts retailer. Seale & Company retailed products of the International Harvester Company, serving primarily south central Louisiana.
The parties who either were, or currently are, involved in this litigation are: Issac T. Seale, Olive Stansel Seale, Richard Seale, Clifford Seale, Theresa M. Seale, the International Harvester Company and the International Harvester Credit Corporation. Issac T. Seale (Seale), prior to the dissolution of Seale & Company, was the president and sole shareholder of Seale & Company. Subsequent to his death during the preliminary stages of this litigation, his succession representatives were substituted in his stead. Olive Stansel Seale (Olive Seale) was the wife of, and is now the widow of, Seale. Olive Seale is one of two succession representatives of the Estate of I.T. Seale *687 and was substituted as a proper party upon his death. Olive Seale was also a signatory, along with her late husband, on a continuing guarantee agreement, which agreement guaranteed certain debts of Seale & Company to the International Harvester Company and the International Harvester Credit Corporation. Richard Seale is the second succession representative of the Estate of I.T. Seale and was also substituted as a proper party upon the death of Seale. Clifford Seale and Theresa M. Seale were co-signatories on a second continuing guarantee agreement. The guarantee agreement executed by Clifford Seale and Theresa M. Seale, identical to the agreement executed by Seale and Olive Seale, guaranteed certain debts of Seale & Company to the International Harvester Company and the International Harvester Credit Corporation. International Harvester Company (Harvester) is an agricultural equipment and repair parts manufacturer. Seale & Company was a Harvester dealer. Subsequent to the institution of this suit, Harvester changed its name to Navistar International Transportation Corporation. This opinion, for convenience purposes, will refer to Harvester, rather than Navistar International Transportation Corporation. International Harvester Credit Corporation (Harvester Credit), the final party to this proceeding, is a business entity entirely distinct from Harvester. The business of Harvester Credit is financing the equipment and repair parts manufactured and sold by Harvester.
The initial pleadings in this case were filed by Harvester Credit. Harvester Credit brought suit against Seale alleging that during the final days of Seale & Company, Seale & Company was over-paid for equipment and repair parts it had returned to Harvester.
Briefly explained, Seale & Company, upon dissolution, returned certain unsold equipment, referred to by the parties as “whole goods,” and repair parts to Harvester. Seale & Company was then either given a credit by Harvester Credit, if Seale & Company was indebted unto Harvester Credit, or as in the instant circumstances, was issued a check for funds due. Harvester Credit alleged that a check drawn to the order of Seale & Company to compensate it for repurchased equipment and repair parts was actually in excess of the amount due.
Harvester Credit brought this suit against Seale personally, rather than against Seale & Company, because when the suit was filed Seale & Company had been dissolved. Harvester credit alleged that Seale was personally responsible for the return of the overpayment pursuant to an affidavit executed by Seale in accordance with La.R.S. 12:142.1 (1982). R.S. 12:142.1 provides that a corporation may be dissolved by filing an affidavit executed by all the shareholders with the Secretary of State. This method of corporate dissolution renders the affiants personally liable for any debts or claims which may subsequently arise against the dissolved corporation.
Harvester Credit also sought, in addition to the return of the alleged overpayment, attorney’s fees incurred in recovering the overpayment. Harvester Credit alleged entitlement to the fees based upon the language contained in the instruments of a collateral chattel mortgage package, specifically, the collateral chattel mortgage note, the collateral chattel mortgage, and the act of pledge. The security instruments in question were executed by Seale as president of Seale & Company.
Seale answered Harvester Credit’s petition by filing a general denial principally because the check which Harvester Credit alleged represented the overpayment was drawn on a Harvester account, not a Harvester Credit account. Seale then filed a reconventional demand against Harvester Credit alleging that Seale & Company did not receive payment for the returned equipment and repair parts pursuant to the dictates of La.R.S. 51:481 (1975) et seq.
R.S. 51:481 et seq., entitled “Repurchase Of Farm, Industrial And Lawn And Garden Equipment By Wholesaler” was enacted by the legislature to “supplement any contract” between, in this case, farm equipment manufacturers and their retailers. *688 La.R.S. 51:485 (1975). La.R.S. 51:484 (1975) provides that “payment required by the wholesaler ... shall be due within sixty days after shipment” of the equipment and repair parts, (emphasis added). Seale alleged that Seale & Company did not receive payment within sixty days of shipment and was, therefore, entitled to. the penalties stipulated by La.R.S. 51:487 (1975).
Seale reconvened against Harvester Credit despite the fact that R.S. 51:481 specifically states that “[t]he provisions of this Part shall apply only to written contracts between any person, firm or corporation engaged in the business of selling and retailing farm, ... equipment, implements, machinery, attachments and repair parts for such equipment and any wholesaler, manufacturer, or distributor of such equipment and repair parts_” R.S. 51:481 does not address finance companies. Seale alleged that if Harvester Credit was entitled to the return of the overpayment that entitlement must be based upon an assignment of Seale & Company’s account by Harvester to Harvester Credit. Seale concluded that if Seale & Company’s account had been assigned to Harvester Credit, then Harvester Credit must be obligated for the penalties allegedly due as a result of the late payment for the returned equipment and repair parts.
Seale followed his reconventional demand against Harvester Credit with a third party demand against Harvester. Seale alleged in his third party demand that if Harvester Credit was not indebted unto him for the penalties stipulated by R.S. 51:487, for the late payment of the repurchased equipment and repair parts, then Harvester, the manufacturer, wholesaler and distributor, must be so indebted.
Subsequent to Seale’s third party demand, Harvester Credit filed a “Supplemental And Amending Petition.” Named as defendants in the amending petition were Olive Seale, Clifford Seale, and Theresa M. Seale. Harvester Credit alleged that Olive Seale, in conjunction with her late husband, and Clifford Seale, in conjunction with Theresa M. Seale, executed two continuing guarantee agreements, guaranteeing to Harvester and Harvester Credit certain indebtedness of Seale & Company. Harvester Credit further alleged that these guarantee agreements obligated the newly named defendants for the amount of the overpayment and, additionally, for the attorney’s fees incurred in recovering the overpayment.
The trial court rendered judgment on Harvester Credit’s initial petition in favor of Harvester Credit and against the Succession of I.T. Seale. The court, concluding that Seale & Company had been overpaid, awarded Harvester Credit $51,074.00, plus interest at the legal rate from the date of judicial demand. The decision of the court rested on the conclusion that Seale, in accordance with the affidavit he had executed, was personally obligated for all indebtedness of Seale & Company, and that Olive Seale and Richard Seale, in their capacity as succession representatives, were the proper parties to respond for the overpayment. The trial court, however, declined to award Harvester Credit attorney’s fees. The court concluded that the collateral chattel mortgage package executed by Seale in his capacity as president of Seale & Company was only intended to provide Seale & Company with a line of credit for loans or credits from Harvester Credit. The court further concluded that the obligation created by the overpayment, the obligation to return a thing not due, was not contemplated by the parties when the collateral chattel mortgage package was executed and, therefore, the provision for attorney’s fees was not applicable.
The trial court rendered judgment on the allegations raised in Harvester Credit’s amending petition in favor of Olive Seale, Clifford Seale, and Theresa M. Seale. The court determined that the three above named defendants were not obligated by the continuing guarantee agreements to return the overpayment nor, for the same reasons, were they obligated to reimburse Harvester Credit for its attorney’s fees.
The court reasoned that the guarantee agreements were contracts of suretyship and that they were to be strictly construed. *689 The court held, subsequent to a thorough review of the agreements, that the agreements were executed to accommodate Seale & Company’s “floor plan financing,” and that the obligation to return the overpayment did not arise as a result of Harvester Credit’s financing Seale & Company’s floor plan equipment.
Judgment on Seale’s reconventional demand was rendered in favor of Harvester Credit and against the Succession of I.T. Seale. The court rejected Seale’s reconven-tional demand concluding that Harvester Credit was not liable for the statutory penalties of R.S. 51:487, for the late payment for the repurchased equipment and repair parts.
The court held that for the purposes of R.S. 51:487 Harvester and Harvester Credit were distinct corporations and that Harvester Credit was not subject to the requirements of the statute. The court, additionally, held that although Harvester Credit could have been considered an agent of Harvester for purposes of the liquidation of the Seale & Company account, that agency relationship was disclosed precluding any liability of Harvester Credit.
The trial court rendered judgment on Seale’s third party demand in favor of the Succession of I.T. Seale and against Harvester. The court awarded the Succession of I.T. Seale, through its co-executors, Olive Seale and Richard Seale, $178,114.64, plus interest from the date of judicial demand. Seale was entitled to judgment, the court reasoned, because Harvester did not pay Seale & Company for the returned equipment within the sixty day period as required by law. The court declined to award penalties for the repair parts de-terming that Seale & Company had been paid within the time period prescribed by the statute.
The court awarded penalties for the failure to make prompt payment for the returned equipment, “whole goods,” for the following reasons. The court concluded that the equipment was shipped from Seale & Company on May 25, and 26, 1983. Lacking evidence of the value of the goods shipped on May 25th, the court held that May 26, 1983 would be considered the effective date of shipment. The court then determined that for payment to have been made within the sixty day statutory period, Harvester would have to have made payment by July 25, 1983. The court ultimately determined that on July 26, 1983, Harvester was indebted unto Seale & Company for the repurchased equipment in the amount of $178,114.64 and awarded the Succession of I.T. Seale an equal amount in penalties.
The trial court, addressing the return of the repair parts, concluded that June 20, 1983 was the effective date of shipment. Although no repair parts were actually transported on June 20th, the court held that the sixty day statutory period began running on June 20th because on that date Harvester sent Seale & Company a letter informing it of Harvester’s intention to exercise a statutory option to pack and ship the repair parts. The court reasoned that upon receipt of the letter Seale & Company’s control over the return of the repair parts was eliminated.
Counting from June 20, 1983, the court ascertained that Harvester would have to have made payment by August 20, 1983, in order to be in compliance with the statute. The court then determined that prior to August 20, 1983, Seale & Company had received four payments or credits in the amounts of $154,616.96, $28,393.95, $52,-172.85, and $8,532.97, respectively. Concluding that Harvester’s total indebtedness unto Seale & Company for the returned repair parts was only $67,883.66, the trial court held that payment had been made within the statutory period and that no penalties were due.
The parties on appeal are: Olive Seale and Richard Seale, in their capacity as the succession representatives of the Estate of I.T. Seale, Harvester and Harvester Credit. Only Clifford Seale and Theresa M. Seale, co-signatories on one of the two continuing guarantee agreements, and Olive Seale, individually, have not appealed.
The issues before the court are:
1. Did the trial court err in concluding that International Harvester Credit *690 Corporation had over-paid L.G. Seale & Company $51,074.00 and that Olive S.Seale and Richard Seale, in their capacity as succession representatives of the Succession of I.T. Seale, were the proper parties to respond for the overpayment?
2. Did the trial court err in declining to award International Harvester Credit Corporation attorney’s fees for the recovery of the overpayment based upon a certain collateral chattel mortgage note, collateral chattel mortgage, and an act of pledge executed by I.T. Seale in his capacity as president of L.G. Seale & Company?
3. Did the trial court err in declining to hold Olive S. Seale, Clifford Seale, and Theresa M. Seale liable for the return of the overpayment and attorney’s fees based upon two continuing guarantee agreements executed by them guaranteeing to International Harvester Credit Corporation certain indebtedness of L.G. Seale & Company?
4. Did the trial court err in concluding that the International Harvester Company had failed or refused to make payment to L.G. Seale & Company for the repurchased equipment, “whole goods,” within sixty days after shipment?
5. Did the trial court err in concluding that the International Harvester Company had not failed or refused to make payment to L.G. Seale & Company for the repurchased repair parts within sixty days after shipment?
6. Did the trial court err in concluding that R.S. 51:487 obligated the International Harvester Company to pay damages to the Estate of I.T. Seale in the amount of 100% of the net cost of the equipment returned, which amounted to $178,114.64?
and
7. Did the trial court err in awarding the Estate of I.T. Seale interest on the 100% damage award from the date of judicial demand?

International Harvester Credit Corporation’s Right to Recover the $51,074.00 Overpayment

Harvester Credit alleges that on September 1, 1983 it paid Seale & Company, in the form of a check, $54,172.88. Harvester Credit contends that through an accounting error this check was never posted to its records and that as a result it made a subsequent payment to Seale & Company in the amount of $62,000.00. The second check, Harvester Credit asserts, was in excess of the amount actually due Seale & company and Harvester Credit now seeks the recovery of the amount allegedly overpaid.
The parties in Paragraph “10” of their jointly executed “Stipulation Of Fact” stipulated,
In connection with the credits given an overpayment was made to L.G. Seale and Company in the amount of $51,074.00 which overpayment was made to the extent of $51,074.00 in the check to L.G. Seale and Company number 64493 dated September 26, 1983 in the amount of $62,000.00.
Although the succession of I.T. Seale was a party to this stipulation and agrees that Seale & Company was over-paid, disagreement arises regarding who made the overpayment and, therefore, who is entitled to recover it. The controversy exists because Harvester Credit is contending it is entitled to recover the $51,074.00 overpayment, but the $62,000.00 payment which resulted in the overpayment was drawn on the International Harvester Company — Accounting Service Center — Marketing Account.
The general proposition entitling one to recover a payment made in error is stated in La.Civ.Code art. 2301 (1870). Article 2301 provides,
He who receives what is not due to him, whether he receives it through error or knowingly, obliges himself to restore it to him from whom he had unduly received it.
La.Civ.Code art. 2304 (1870) defines a “thing not due” as “that which is paid on *691 the supposition of an obligation which did not exist_” The jurisprudence interpreting articles 2301 et seq. place the burden of proof in a suit for restitution of a thing not due on the plaintiff. The plaintiff must prove his right to restitution by a preponderance of the evidence. Julien v. Wayne, 415 So.2d 540 (La.App. 1st Cir. 1982); and Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Theriot, 383 So.2d 413 (La.App. 4th Cir.1980).
The burden at trial was on Harvester Credit to demonstrate its right to recover the $51,074.00 overpayment. Absent “manifest error,” this Court will not substitute its judgment for that of the trial judge. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Harvester Credit contended at trial that although the check which amounted to the overpayment was drawn on a Harvester account, the funds which Seale & Company were paid belong to Harvester Credit, not Harvester. Harvester Credit, in its efforts to prove its right to restitution, brought forth evidence which established the business relationship between itself, Harvester Credit, and Harvester. The primary evidence consisted of two agreements entered into between Harvester Credit and Harvester. The first agreement was entitled, “AGREEMENT Between International Harvester Company and International Harvester Credit Corporation Dated — May 9, 1958 Effective — November 1, 1957 Composite — :_, 1981.” The second agreement was entitled, “ACCOUNTS RECEIVABLE SALE AGREEMENT BETWEEN INTERNATIONAL HARVESTER COMPANY AND INTERNATIONAL HARVESTER CREDIT CORPORATION DATED — MAY 30, 1975 COMPOSITE-MAY 17, 1982.” Harvester Credit also relied on the testimony of Mr. John Raymond Hancock. Hancock was, at the time of the overpayment, a Harvester Credit Collection Manager responsible for wholesale and retail accounts receivable collections.
The agreements and testimony establish that Harvester Credit and Harvester contracted for Harvester Credit to purchase contracts and accounts receivable generated by Harvester, presupposing Harvester Credit’s ability to finance the transactions. The evidence further established that a monthly settlement, in which the accounts of all Harvester dealers in the United States were lumped together, was rendered between Harvester Credit and Harvester at the end of each month. Settlement for all accounts was made simultaneously. The Harvester and Harvester Credit agreements, and the testimony of Hancock convinces this court that the Seale & Company account was a Harvester Credit account.
The testimony of Mr. Henry H. Ledoux, the former General Manager of Seale & Company responsible for all corporate operations, further substantiated Harvester Credit’s contentions. Ledoux acknowledged under oath that it was general knowledge that there was an agreement between Harvester and Harvester Credit. Ledoux also testified that Seale & Company was in receipt of a letter from Harvester Credit dated December 15, 1981, advising Seale & Company of the assignment of their account to Harvester Credit.
The question now becomes, why, if the Seale & Company account was a Harvester Credit account, was the check which amounted to the overpayment drawn on a Harvester checking account? The resolution of this question requires a second review of the two Harvester-Harvester Credit agreements.
The agreements reveal that, in addition to the previously addressed aspects, Harvester agreed to provide accounting services through its Accounting Service Center to Harvester Credit. The checking accounts used by the International Harvester Company-Accounting Service Center were, for convenience purposes, in the name of Harvester. Although the checking accounts were in the name of Harvester, prior to issuing any checks Harvester had to be authorized by Harvester Credit. Harvester usually received its authorizations in the form of a “working fund request” or by way of a telephone request from Harvester Credit.
The evidence in the instant case establishes that Harvester Credit requested, by *692 way of a telephone request, that the Harvester Accounting Service Center issue a check in the amount of $54,172.88 to Seale & Company. The evidence further establishes that this payment was never posted to Harvester Credit’s books and that as a result Harvester Credit issued a second check to Seale & Company, $51,074.00 in excess of the amount actually due. Harvester Credit is, therefore, entitled to recover from the Estate of I.T. Seale, $51,-074.00.
Harvester Credit, in a one sentence declaration in its brief, argues that Olive Seale, the widow of Seale, is personally liable for the return of the overpayment. Harvester Credit requests that the decision of the lower court, concluding that Olive Seale is not personally liable, be reversed.
Harvester Credit’s argument is premised on the assumption that the matrimonial regime of Olive Seale and I.T. Seale was one of community property. Our laws do not presume that married couples live in a community property regime. Since the record is void of any evidence that the Seale’s matrimonial regime was one of community property, we cannot presume that the obligation incurred by Seale to return a thing not due was a community obligation. La.Civ.Code arts. 2325, et seq. Olive Seale is not individually indebted unto Harvester Credit for the return of the overpayment.

International Harvester Credit Corporation’s Demand for Attorney’s Fees

Harvester Credit has argued on appeal that the trial court erred in declining to award it the attorney’s fees incurred as a result of its efforts to recover the $51,-074.00 overpayment. Harvester Credit alleges it is entitled to reimbursement for the fees from the Succession of I.T. Seale pursuant to specific clauses in the documents of a collateral chattel mortgage package executed by Seale as the president of Seale & Company.
The clauses Harvester Credit has brought to the Court’s attention are found in the collateral chattel mortgage and the act of pledge. The mortgage reads, in part, that Seale & Company,
desiring to secure funds or credit on the purchase of goods from any person, firm or corporation willing to loan or extend such funds or credit ... does by these presents declare and acknowledge the debt in the sum of ... and to evidence such indebtedness, has executed ... one (1) certain promissory note ... paraphed ‘Ne Varietur’ for identification herewith. ...
The act of pledge provides that the note was pledged to secure “any and all indebtedness and obligations that may now or hereafter be owing” by Seale & Company.
Pursuant to the language in the instruments Harvester Credit would be entitled to attorney’s fees, if it could establish that the indebtedness which it recovered was intended to be secured. We conclude, after having thoroughly reviewed the note, the mortgage, and the act of pledge, that the trial court correctly declined to award attorney’s fees. The security documents, as held by the trial judge, evince an intent on the part of Harvester Credit and Seale & Company to establish for Seale & Company a secured line of credit for loans or credits from Harvester Credit. We do not believe the parties intended to secure an obligation which arose as the result of a thing paid in error.
Security devices because of their nature and function must be strictly construed. Durham v. First Guarantee Bank of Hammond, 331 So.2d 563 (La.App. 1st Cir.1976), writ denied, 334 So.2d 431 (La.1976). They should not be extended or modified by a “fine turn of language.” Thrift Funds Canal, Inc. v. Foy, 242 So.2d 253, 256 (La.App. 4th Cir.1970), affirmed, 261 La. 573, 260 So.2d 628 (1972). The pledge of a collateral chattel mortgage note is a contract and contracts of pledge only secure that indebtedness contemplated by the pledgor and pledgee. La.Civ.Code art. 3133; and Alaynick v. Jefferson Bank & Trust Co., 451 So.2d 627 (La.App. 5th Cir.1984).
*693 Neither Harvester Credit nor Seale & Company contemplated, when the collateral chattel mortgage package was confected, that it should secure any indebtedness created by an overpayment. The provisions for attorney’s fees are not applicable.

Liability Of The Signatories To The Continuing Guarantee Agreements

Harvester Credit alleged in the lower court, and now on appeal, that Olive Seale, Clifford Seale and Theresa M. Seale were each personally indebted unto Harvester Credit for the amount of the overpayment to Seale & Company and for its attorney’s fees. Harvester Credit argued that each of the defendants assumed that liability when they executed two continuing guarantee agreements on July 17, 1981, guaranteeing to Harvester Credit certain indebtedness of Seale & Company.
The guarantees in question, one executed by Olive Seale in conjunction with her late husband, and the other executed by Clifford Seale and Theresa M. Seale, jointly, provide that,
The undersigned ... hereby guarantees payment, at maturity, of any and all indebtedness or obligations, whether primary or secondary, for which L.G. Seale & Co., Inc. ... is now or may hereafter become liable or indebted to International Harvester Company or International Harvester Credit Corporation.
The agreements further provided for the recovery of attorney’s fees. It is on the two above addressed clauses that Harvester Credit rests its argument.
Contracts of guarantee, because they are engagements to answer for the indebtedness of another, are governed by the Civil Code articles regulating surety-ship. La.Civ.Code arts. 3035 et seq.; McKesson Chemical Co. v. Tideland Chemical Co., 471 So.2d 812 (La.App. 3rd Cir.1985); First Nat. Bank of Crowley v. Green Gardens Processing Co., 387 So.2d 1070 (La.1980). Suretyship, as defined by La.Civ.Code art. 3035 (1870), is “an accessory promise by which a person binds himself for another already bound and agrees with the creditor to satisfy the obligation if the debtor does not.” Contracts of suretyship are not to be presumed, must be express and are to be “restrained within the limits intended by the contract.” La.Civ.Code art. 3039 (1870).
Subsequent to a review of the Code and the interpreting jurisprudence, it is evident that the issue upon which liability turns is the intent of the parties at the time the continuing guarantee agreements were executed. The evidence presented the trial court, particularly Paragraph “3” of the “Stipulation of Fact,” establishes that the guarantee agreements were executed to accommodate the floor plan financing of Sea-le & Company.
Paragraph “3” provides,
Prior to dissolution, L.G. Seale and Company received from International Harvester Credit Corporation financing for its floor plan equipment and parts sold in the normal course of business. In connection with the floor plan retail financing of L.G. Seale and Company for equipment and repair parts the following documents were executed:
a. ...
e. Guarantee agreement of I.T. Seale and Olive Seale dated July 17, 1981 attached hereto as Exhibit J-7.
f. Guarantee agreement of Clifford Sea-le and Theresa M. Seale dated July 17, 1981 attached hereto as Exhibit J-8. (Emphasis added).
We do not believe that the obligation which arose as the result of the overpayment in any manner pertains to the floor plan financing of Seale & Company. We, therefore, affirm this aspect of the lower court decision.

Shipment and Payment for the “Whole Goods”

R.S. 51:481, et seq., enacted by the legislature in 1975, for which this Court bears the responsibility of its initial appellate review, was intended by the legislature to supplement written contracts between farm equipment and repair parts manufacturers and their retailers. The statute specifically provides that upon dissolution of *694 the manufacturer-retailer relationship the retailer is entitled to terminate the relationship pursuant to the terms of his contract with the manufacturer or he may avail himself of the advantages of the statute. Seale & Company elected to pursue the remedies provided by statute.
Specifically addressing only the “whole goods,” the equipment and machinery, La. R.S. 51:482 (1975) provides that upon the cancellation or discontinuance of a manufacturer-retailer contract, the manufacturer becomes obligated to pay the retailer, or credit his account, an amount equal to “one hundred percent of the net cost of all new unused complete implements, equipment, machinery and attachments” purchased by the retailer within the twenty four months immediately preceding notification to the manufacturer of the retailer’s intent to cancel. The manufacturer is also obligated to reimburse the retailer or credit his account for transportation charges and excise taxes. R.S. 51:484 dictates that “payment [for the equipment] ... shall be due within 60 days after shipment....’’ (emphasis added).
The trial judge’s “Reasons for Judgment” reveal the following findings of fact;
1. The equipment was shipped from Seale & Company on May 25 and 26, 1983;
2. The total value of all equipment returned to Harvester was $214,569.62;
3. Payment or credit by Harvester to Seale & Company had to be made within sixty days of May 26, 1983, by Wednesday, July 26, 1983;
4. Seale & Company was, on July 26, 1983, indebted unto Harvester for $36,-198.18;
5. Harvester credited the account of Seale & Company $67.86 on July 19,1983 and $189.00 on July 22, 1983;
6. Harvester was indebted unto Seale & Company on July 26, 1983, in the net amount of $178,114.64; and
7. Seale & Company received from Harvester the following four payments:
(1)Check No. 55430, dated August 1, 1983, in the amount of $154,616.96 was received August 4, 1983;
(2) Check No. 57710, dated August 16, 1983, in the amount of $28,393.95 was received August 18, 1983;
(3) Check No. 59509, dated September 1, 1983, in the amount of $54,172.88 was received September 5, 1983; and
(4) Check No. 64493, dated September 26, 1983, in the amount of $62,00.00 was received, after September 26, 1983 but, on or before September 28, 1983.
The record reveals that the payments addressed in 7(1) and 7(2) were for “whole goods” and that those addressed in 7(3) and 7(4) were for repair parts.
Simplifying the trial court’s findings, the court concluded that the total value of the equipment returned to Harvester was $214,569.62. The court subtracted from that figure $67.86 and $189.00, as credits Harvester gave Seale & Company, and $36,198.18, as an additional amount which Seale & Company owed Harvester. The court then arrived at the net figure of $178,114.64 which it determined to be the amount which Harvester was obligated by statute to pay Seale & Company within sixty days after shipment.
The trial court concluded, absent testimony of the value of the equipment shipped on May 25,1983, that May 26,1983 was the effective date of shipment. The court arrived at this determination despite testimony by Harvester witnesses that Harvester and Seale & Company had agreed that the termination date would be May 31,1983. Harvester contends that the equipment repurchase statute does not affect the termination date clause of the manufacturer-retailer agreement. We conclude that the trial judge correctly resolved the issue.
Even conceding, for argument’s sake, that May 31, 1983 should be considered the effective date of shipment, payment by Harvester would still have been made beyond the sixty day statutory period. If May 31, 1983 was to be considered the effective date of shipment, payment, to have been made within sixty days, would have to have been made by Saturday, July 30, 1983. Saturdays are not legal holidays *695 in St. Landry Parish and the evidence indicates that the parties did not consider Saturdays in any light other than regular business days. La.R.S. 1:55 (1950) (as amended). Since the first payment by Harvester, or Harvester Credit as the case may be, was not received until August 4, 1983, payment would still not have been made in compliance with the statute.
Once again, for argument’s sake alone and in contradiction of the evidence, if we were to elect not to consider Saturday as a business day for purposes of the statute, Harvester would still have not made payment within the sixty day period. If Saturday, July 30,1983 was considered a holiday then the next business day would have been Monday, August 1, 1983. Harvester did not make “payment” as intended by R.S. 51:484 by August 1, it only dated its check August 1.
“Payment” as contemplated by R.S. 51:484, means receipt by the retailer of the funds to which it was entitled pursuant to R.S. 51:482. See, La.R.S. 1:3 (1950). Paraphrasing the opinion of the district judge, payment as intended by the statute means that the retailer should receive his money by the end of the sixtieth day in order that he may pursue new business ventures. Seale & Company, in the instant case, did not receive any payments until August 4, 1983 and even then, the amount received was inadequate to comply with the statute.
Although we are in agreement with the trial court that Harvester failed to make payment within the sixty day statutory period, we believe that certain calculations of the lower court are erroneous. Despite the fact that these errors were not raised on appeal, we would be derelict in our constitutional duties to review both the law and the facts were we to ignore them. La. Const. Art. 5 § 10(B). Pursuant to that grant of authority in La.Code Civ.Proc. art. 2164 (1960) we will render that judgment which is “just legal and proper upon the record on appeal.” See also, Woods v. Ratliff, 407 So.2d 1375 (La.App. 3rd Cir. 1981).
The trial court determined that $214,-569.62 in equipment was returned to Harvester. The court reduced that amount by $67.86 and then, again, by $189.00. We are convinced after an examination of the “Stipulation of Fact,” Paragraph “12”, that the two above addressed credits were given to Seale & Company not for returned whole goods, but rather, for returned repair parts. The court also reduced the original figure by $36,198.18, concluding that Seale & Company was indebted unto Harvester for that amount on July 26, 1983. Paragraph “8” of the “Stipulation of Fact” indicates otherwise. Paragraph “8” appraises us that the $36,198.18 figure, which included indebtedness for both whole goods and repair parts, . was indebtedness Seale & Company owed Harvester Credit, not Harvester. The original figure of $214,569.62 should not have been reduced by $36,-198.18. Therefore, the total amount Harvester owed Seale & Company for returned equipment on the close of business on July 25, 1983, the sixtieth day following shipment, was $214,569.62.

Shipment and Payment For The Repair Parts

La.R.S. 51:483 (1975) is the “repair parts” counterpart to R.S. 51:482. Section 483 provides that upon cancellation or discontinuance of a manufacturer-retailer contract, the manufacturer becomes obligated to pay the retailer, or credit his account if there are any outstanding balances, an amount “equal to ninety percent of the current net prices on repair parts previously purchased” by the retailer and either held in his inventory on the date of cancellation or discontinuance, or subsequently received from the manufacturer. R.S. 51:484, which is equally applicable to both the return of whole goods and repair parts, provides that payment for the repurchased repair parts must be made within sixty days after shipment.
The trial judge determined that the value of the returned repair parts amounted to $67,883.66. The court, additionally, determined that the effective date of shipment was June 20, 1983 and that to avoid the penalty provision of R.S. 51:487 Harvester *696 would have to have made payment to Seale & Company, or credited its account for any outstanding balances, by August 20, 1983.
The trial court concluded that Harvester had complied with the statute and that no penalties were due. We disagree.
The trial judge held that for purposes of the equipment and repair parts repurchase statute, June 20, 1983 was the effective date of shipment of the repair parts. June 20, 1983 was selected because on that date Harvester notified Seale & Company that it intended to exercise its option pursuant to La.R.S. 51:488 (1975) to inventory, pack, load and transport the repair parts. The trial judge reasoned that upon receipt of notification Seale & Company lost control over the return of the repair parts.
The court made its determination subsequent to a consideration of the legislative intent of R.S. 51:481, et seq. The court concluded that the statute was intended to provide farm implement dealers with stronger bargaining positions upon dissolution. The court ultimately concluded that the date selected was the “least onerous” to Seale & Company.
The trial court, prior to declaring June 20, 1983 the effective date of shipment, was obligated, as we are now, to consider all other possible dates. The other possible dates were: June 28, 29, and 30, 1983, considered cumulatively, the dates on which Harvester packed the repair parts; July 8, 1983, the date on which one-half of the repair parts were transported; and July 15, 1983, the date on which the remaining repair parts were transported.
We conclude, for the reasons enunciated by the trial judge, that June 20,1983 was the effective date of shipment. We have reached this conclusion after determining that “shipment,” as used in the statute, is not merely a synonym for transport. “Shipment,” as used in the statute, is a technical word having particular meaning to the statute and must be so interpreted. R.S. 1:3.
The trial court next determined that for payment to have been made within the sixty day statutory period, it would have to have been made by August 20, 1983. The court held that subsequent to July 25,1983, the final day upon which payment for the whole goods could have been made but, prior to August 20, 1983, Harvester paid Seale & Company, or credited its account, in excess of $67,883.66. The payments or credits referenced by the trial court were: (1) a payment dated August 1, 1983 in the amount of $154,616.96; (2) a payment dated August 16, 1983 in the amount of $28,-393.95; (3) a credit dated August 17, 1983 in the amount of $52,172.88; and (4) a credit dated August 24, 1983 in the amount of $8,532.97.
We conclude that the trial court correctly determined that August 20, 1983 was the final day upon which payment could be made without incurring the penalties stipulated by R.S. 51:487. Although August 20, 1983 was a Saturday, we do not believe this fact has any impact on our decision. As previously addressed, Saturdays in St. Landry Parish are not public days of rest and as previously addressed, the parties considered Saturdays to be regular business days.
The trial court, however, incorrectly concluded that Harvester had made payment by August 20, 1983. The trial court determined that on August 1 and August 16,1983 Harvester made payments to Seale & Company in the amounts of $154,616.96 and $28,393.95, respectively. These payments should not have been considered by the court. The evidence indicates that they were payments for whole goods, not repair parts. The trial court also incorrectly concluded that a credit referenced in Paragraph 12 of the “Stipulation of Fact” in the amount of $8,532.97 and dated August 25, 1983, was made to the Seale & Company account prior to August 20, 1983. The court, therefore, should have only considered the $52,172.88 credit.
Absent from the court’s calculations were two credits which should have been included. Paragraph “12” of the “Stipulation of Fact” provides that two credits dated July 19 and July 22, 1983 and in the amounts of $67.86 and $189.00, respectively, were made to the Seale & Company *697 account. Our review of the record and the trial judge’s “Reasons for Judgment” lead us to the conclusion that the two credits were not included in the repair parts calculations because they were mistakenly included in the whole goods calculations.
Summarizing our determinations, we conclude that on or before August 20, 1983 Seale & Company received payments or credits which totalled $52,429.74. This figure includes the July 19, 1983 credit of $67.86, the July 22, 1983 credit of $189.00, and the August 17, 1983 credit of $52,-172.88. The $52,429.74 amount does not include the August 1, 1983 payment of $154,616.96, the August 16, 1983 payment of $28,393.95, both of which were for equipment not repair parts, or the August 25, 1983 credit of $8,532.97, which was made after August 20, 1983.
We now turn our attention to the amount which Seale & Company should have received by August 20, 1983. The lower court concluded that the value of the returned repair parts amounted to $67,883.66. Subsequent to an examination of Paragraph “7” of the “Stipulation of Fact,” we believe this figure is correct. We must, however, provide two explanations for our decision. First, R.S. 51:483 only obligates the manufacturer to reimburse the retailer for ninety percent of the current net price of the returned repair parts. We can only conclude, lacking evidence to the contrary, that the $67,883.66 figure represents only ninety percent of the total current net value of all returned repair parts. Second, Seale & Company had an open account balance of $6,639.47. While we conclude that this balance was incurred as a result of repair part purchases, we believe that this indebtedness was owed to Harvester Credit not Harvester, Harvester Credit having been assigned the Seale & Company open account.
Concisely stated, our ultimate conclusions are as follows:
1.“Shipment” for purposes of the equipment repurchase statute, occurred on June 20, 1983, the date Harvester informed Seale & Company of its intention to pack and transport the parts;
2. The final date upon which payment could have been made in compliance with the statute was August 20, 1983;
3. The value of repair parts repurchased by Harvester was $67,883.66; and
4. Harvester had paid or credited the account of Seale & Company for $52,-429.74 by August 20, 1983.
We, therefore, conclude that Harvester failed to make payment for the repurchased repair parts within the sixty day statutory period.

Penalties And Interest Pursuant To R.S. 51:487

R.S. 51:487 provides,
In the event that the manufacturer, wholesaler or distributor fails or refuses to make payment to the retailer or his heir or heirs as required by this Part within sixty days after shipment of returned items, he shall be liable to the retailer or his heir or heirs for damages in the following amounts: (a) one hundred percent of the net cost of the equipment, implements, machinery and attachments, (b) transportation charges which have been paid by the retailer, (c) one hundred percent of the current net price of repair parts, and (d) interest at the same rate as fixed by law for legal interest, accruing from sixty days after shipment of returned items. (Emphasis added).
Harvester argues that the trial court incorrectly interpreted section 487 as providing for a one hundred percent penalty for failure to make payment within sixty days of shipment. We conclude that the trial court correctly interpreted the statute.
La.R.S. 1:4 (1950), provides,
When the wording of a Section is free and clear of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit.
We believe, despite the severity of the penalties imposed, that R.S. 51:487 is clear and unambiguous. We are, therefore, obligated to apply it as written. Hebbler v. New Orleans Fire Department, 310 So.2d 113 (La.1975).
*698 Having previously determined that Harvester failed to make payment for the equipment and repair parts within the sixty day statutory period, we must now impose the penalties. Harvester is indebted unto the Estate of I.T. Seale for failure to comply with R.S. 51:484 in the amounts of: (1) $214,569.62 for the equipment; and (2) $75,426.88 for the repair parts. The Estate of I.T. Seale is awarded $75,426.88 for late payment for the returned repair parts, rather than $67,883.66, because, as we previously concluded, the $67,883.66 figure only represents ninety percent of the total value of the returned repair parts, as per R.S. 51:483.
Interest on the penalties, pursuant to subsection (d), began to accrue from the sixty-first day. Harvester, therefore, is indebted for interest on the penalties for the returned whole goods from July 26, 1983, and for the returned repair parts from August 21, 1983.
For the above and foregoing reasons the judgment of the district court which granted judgment in favor of the Succession of I.T. Seale through its co-executors, Richard Seale and Olive Stansel Seale against International Harvester Company, now known as Navistar International Transportation Corporation, is amended to increase the amount awarded to the sum of $289,996.50 with legal interest on the sum of $214,-569.62 from July 26, 1983 until paid, and legal interest on the sum of $75,426.88 from August 21, 1983, until paid.
The judgment of the district court is otherwise affirmed.
All costs on appeal will be assessed two-thirds to International Harvester Company, now known as Navistar International Transportation Corporation, and one-third to International Harvester Credit Corporation.
AFFIRMED IN PART, AMENDED IN PART, REVERSED IN PART, AND RENDERED.