518 So.2d 1039 (1988)
INTERNATIONAL HARVESTER CREDIT CORPORATION
v.
I.T. SEALE, et al.
No. 87-C-1378.
Supreme Court of Louisiana.
January 18, 1988.
Rehearing Denied February 25, 1988.
Daniel A. Smith, Deutsch, Kerrigan & Stiles, New Orleans, for applicant.
David M. Cohn, Shows, Clegg & Cohn, Baton Rouge, John Pucheu, Eunice, Charles S. McCowan, Jr., David K. Nelson, Kean, Miller, Hawthorne, Darmond, McCowan & Jarman, Baton Rouge, amicus curiae for Massey Ferguson, Inc.
Joe E. Thompson, Baton Rouge, amicus curiae for Deep South Equipment Dealers Ass'n and Affiliated Members.
*1040 Miles P. Clements, Terry A. McCall, Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, New Orleans, Michael Fischer, Foley & Lardner, Washington, D.C., amicus curiae for J.I. Case Co.
Aaron Frank McGee, Guillory & McGee, Eunice, amicus curiae for Charles W. Abell, Sr., et al.
David A. Fraser, Brame, Bergstedt & Brame, Lake Charles, amicus curiae for Fontenot Motors, Inc.
COLE, Justice.
This is a case of statutory interpretation. La.R.S. 51:487 provides for the liability of a manufacturer upon the manufacturer's failure to timely repurchase from the retailer farm equipment and repair parts following cancellation or discontinuance of a written contract between the parties. The issue presented is whether the provision imposes a 100% penalty against the manufacturer, in addition to requiring full reimbursement for the equipment and 90% reimbursement for the repair parts.
In this case of first impression, the trial court interpreted section 487 as authorizing the imposition of a 100% penalty. The court of appeal affirmed, holding the trial court had correctly interpreted the statute. We disagree and reverse.

FACTS
The factual and procedural background of this relatively complex case is fully reported by the court of appeal in its opinion. 509 So.2d 684 (La.App. 3d Cir.1987). What follows is a brief summary of the case.
This proceeding originated as a suit by International Harvester Credit Corporation (IHCC) to recover an overpayment from the defendants for goods returned following the dissolution of L.G. Seale & Company, Inc., a dealer of International Harvester Company, now known as Navistar International Transportation Corporation. The defendants, former shareholders and their heirs (Seale), filed a reconventional demand alleging IHCC had not paid for equipment returned in accordance with La.R.S. 51:481, et seq.
Seale asserted two basic claims, each corresponding to the class of goods returned. First, Seale claimed IHCC failed to reimburse Seale for unused equipment or "whole goods" within sixty days of shipment. The total value of this class of equipment returned was $214,569.62. Since these goods were shipped on May 26, 1983 and payment was not received until August 4, 1983, Seale asserted it was due an additional $214,569.62 as a penalty under section 487. The second claim was similar to the first except Seale claimed $67,883.66 was due as a penalty for returned repair parts.
The trial court rendered judgment in favor of IHCC on its demand, concluding Seale had been overpaid $51,074.00. With respect to Seale's reconventional demand, the trial court awarded a penalty of $178,114.64, for late payment of the returned whole goods, offsetting certain amounts owed IHCC. The trial court declined to award penalties for the repair parts, offsetting the payments made for the whole goods against what was due for the repair parts.
The court of appeal affirmed the decision of the trial court with respect to the overpayment due IHCC. It also concluded the trial court properly interpreted section 487 as providing for a 100% penalty for failure to make payment within sixty days. However, the court of appeal disagreed with the trial court's calculation of the penalties due and increased the award for whole goods to $214,569.62 and for repair parts to $75,426.88. The latter figure was awarded by the court of appeal, rather than $67,883.66, after concluding the lower figure represented only 90% of the value of the repair parts, the amount set forth by R.S. 51:483 for reimbursement cost. On application of plaintiff, we granted certiorari to review the correctness of the interpretation of these statutes by the courts below. Because we find the courts below improperly construed La.R.S. 5:487 as providing for a 100% penalty, it is unnecessary to address the other errors raised by the appellant.

*1041 THE LAW
The statute in question was enacted in 1975 by Act 283. The provisions of the Act apply to written contracts between farm equipment manufacturers and their retail dealers and operate to supplement these contracts. La.R.S. 51:481, 485. The legislation is designed to protect the dealer in the event the contract is terminated, for whatever reason, by requiring the manufacturer to repurchase the dealer's unsold inventory. The dealer has the option to elect between liquidating his inventory under his contract with the manufacturer or proceeding under the statute. When the dealership contract is terminated a dealer will typically have both new equipment and repair parts in inventory. The legislation addresses each class of inventory separately
The repurchase of new equipment or "whole goods" is governed by R.S. 51:482 which requires the manufacturer to pay the retailer, or credit his account, a sum equal to 100% of the net cost of all new equipment purchased during the twenty-four months preceeding notification of termination of the contract. Repair parts are similarly treated under section 483, except the manufacturer must reimburse the retailer for only 90% of the current net prices of the parts and the manufacturer is not obligated to repurchase certain items subject to deterioration.
The liability of a manufacturer who fails to make the specified payments within sixty days after shipment is governed by the provisions of R.S. 51:487:
In the event that the manufacturer, wholesaler or distributor fails or refuses to make payment to the retailer or his heir or heirs as required by this Part within sixty days after shipment of returned items, he shall be liable to the retailer or his heir or heirs for damages in the following amounts: (a) one hundred percent of the net cost of the equipment, implements, machinery and attachments, (b) transportation charges which have been paid by the retailer, (c) one hundred percent of the current net price of repair parts, and (d) interest at the same rate as fixed by law for legal interest, accruing from sixty days after shipment of return items. (Emphasis added).
In interpreting the statute the court of appeal stated: "We believe, despite the severity of the penalties imposed, that R.S. 5:487 is clear and unambiguous. We are, therefore, obligated to apply it as written." 509 So.2d at 697.

DISCUSSION
The term "damages," unmodified by penal terminology such as "punitive" or "exemplary," has been historically interpreted as authorizing only compensation for loss, not punishment. Vincent v. Morgan's La. T.R. & S. Co., 140 La. 1027, 1051, 74 So. 541, 549 (1917); 2 Planiol, Treatise on the Civil Law § 221 (La.State Law Inst. Translation 1959). Under Louisiana law, punitive or other "penalty" damages are not allowable unless expressly authorized by statute. Ricard v. State, 390 So.2d 882 (La.1980); Killebrew v. Abbott Laboratories, 359 So.2d 1275 (La.1978); Alexander v. Burroughs Corp., 359 So.2d 607 (La. 1978). Additionally, when a statute does authorize the imposition of a penalty, it is to be strictly construed. State v. Peacock, 461 So.2d 1040, 1044 (La.1984); Crowe v. Equitable Life Assurance Society of the United States, 179 La. 444, 452-53, 154 So. 52, 55 (1934); Turner v. Metropolitan Life Insurance Company, 189 La. 342, 254, 179 So. 448, 451 (1938).
Although civil statutes imposing a penalty or punitive damages are rare, our legislature has chosen to provide such recovery in the commercial context in several instances. The most analogous is the buy-back provision of La.R.S. 32:1257 enacted for the benefit of motor vehicle dealers. Under this statute when the dealer ceases to do business the manufacturer is required to repurchase the inventory within thirty days of the dealer's notification to the manufacturer. La.R.S. 32:1257(A). If the manufacturer fails to repurchase the inventory as required, his liability to the dealer is governed by La.R.S. 32:1256(B) which provides:

*1042 Failure to make said repurchase without just cause shall subject the manufacturer to a penalty of one and one-half percent per month or fraction thereof of the inventory value of returnable motor vehicles and parts, payable to the dealer, as long as said repurchase is not made. (Emphasis added).
Other statutes similarly specify the punitive nature of the damages awarded and the method of calculating the award. When a check is dishonored for insufficient funds the drawer is liable for "damages of twice the amount so owing ..." if he fails to satisfy the obligation within thirty days of demand. La.R.S. 9:2782(A). If a contractor fails to pay a subcontractor without reasonable cause within fourteen days of receipt of payment from the owner the contractor is liable for "a penalty in the amount of one-half of one percent of the amount due, per day, ... not [to] exceed fifteen percent of the outstanding balance due." La.R.S. 9:2784(C). Under the Louisiana Consumer Credit Law the consumer may recover a "civil penalty" equal to "three times the amount" if the extender of credit has intentionally violated or is found to be in bad faith in violating the provisions of the Consumer Credit Law.
The most common area of the law in which the legislature has authorized the award of penalties relates to the insurance industry. Several sections of the Insurance Code authorize the award of penalties for the failure of an insurance company to timely pay a claim. With regard to life insurance contracts, if the insurer fails to settle a claim within sixty days without just cause, interest calculated at eight percent per annum from the date of receipt of the proof of death is added to the claim. La.R. S. 22:656. This additional award of interest is denoted a "penalty." Id. Failure to pay timely under the terms of health and accident contracts without "just and reasonable grounds" subjects the insurer to "a penalty payable to the insured of double the amount ... due." La.R.S. 22:657(A). Other types of insurance contracts are governed by section 658, which provides for "a penalty, in addition to the amount of the loss, of ten percent damages on the total amount of the loss," if the failure to pay is found to be "arbitrary, capricious or without probable cause."
In a case interpreting Act No. 310, § 3 of 1910, the predecessor to R.S. 22:657, our courts were called upon to make a similar interpretation of a penalty clause. Wilkins v. Universal Life Ins. Co., 159 So. 185 (La.App.1935). Under this Act, if the insurer delayed payment of a claim more than thirty days from the receipt of the claim without just and reasonable grounds, the insurer was liable for a "penalty, double the amount due under the terms of the policy." Counsel for the insured argued the total amount due under the section was the amount due under the policy plus a 200% penalty. Citing the general law with regard to the interpretation of penalty clauses noted previously, the court rejected this argument. Id. at 186, 187. This interpretation was approved by this court in Bain v. Life & Casualty Ins. Co. of Tennessee, 188 La. 290, 296, 176 So. 129, 131 (1937).
While this is not an exhaustive list of statutes awarding penalty or punitive damages, we have been unable to find any such statute in which the legislature has not clearly shown its intent by either denoting the award a "penalty," modifying the term "damages" with such language as "punitive" or "exemplary," or specifically awarding an amount in excess of the claimant's losses.

LEGISLATIVE HISTORY OF ACT 283 of 1975
In attempting to discern whether the legislature intended La.R.S. 51:487 to authorize the imposition of a 100% penalty, we now turn to the legislative history of Act 283.
Act 283 was introduced as Senate Bill No. 264 by Senator Kenneth Osterberger. As originally enrolled section 482 provided for the repurchase of whole goods at 100% of the net cost, and section 483 provided for the repurchase of repair parts at 90% of the current net prices. Sen.B. 264, Reg. Sess., pp. 2, 3 (1975). Also, section 488 *1043 governed the liability of the manufacturer for failure to repurchase the inventory on a timely basis. Id. at 4. It stated the damages to be: (a) 100% of the net cost of the equipment, (b) transportation charges which were paid by the retailer, (c) 90% of the current net price of repair parts, (d) 5% for handling, packing and loading, if applicable, and (e) legal interest accruing sixty days after shipment. Id.
The Bill was then sent to the Senate Agricultural Committee. Mr. Jimmy Dillon, a representative of the Farm and Power Equipment Dealers' Association, told the committee that dealers needed protective legislation in the event the manufacturer terminated the contract and said minimum standards should be set up to protect the dealer after termination. Minutes of Senate Agriculture Committee, Reg.Sess., p. 2 (May 26, 1975). He further stated North and South Dakota had passed very similar legislation and that International Harvester and John Deere were examples of manufacturers who already had these basic provisions in their dealership contracts. Id.
Senator Osterberger, the author of the Bill, cited the example of a dealer who dies, leaving a family but no one interested in continuing the business. He stated his bill would set up some minimum standards for contracts which would provide some method for survivors to send back an inventory to the manufacturer. Id. at 3.
While this is not a complete summary of the committee meeting, it does reflect the general concerns of those testifying. What is most notable is the complete absence of any testimony which can be construed as even suggesting that section 487 was intended to authorize a penalty of any kind.
On the Senate floor, section 483 was amended to increase the repurchase price of repair parts from 90% of the net current price to 100%. This left the liability under section 487, previously numbered section 488, for failure to repurchase repair parts within sixty days at 90% of the current net price. Section 487 was also amended to delete the 5% handling and repacking charge. The Bill was then passed by the Senate and sent to the House.
In the House, the Bill was referred to the House Committee on Agriculture, where several amendments were made. However, the minutes of that Committee meeting are not available, apparently because those records have been destroyed. Legislative records do reveal, however, that section 487 was amended in the House Committee to increase the liability of the manufacturer for failing to timely repurchase repair parts from 90% to 100% of the current net prices. Thereafter, on the House floor, section 483 was amended to reduce the repurchase price of repair parts from 100% to 90% of the net current prices, reversing the amendment passed by the Senate. Significantly, the effect of these changes was to increase the liability of the manufacturer by 10% for the repurchase of the repair goods, in addition to adding interest costs, if he failed to reimburse the dealer within sixty days of shipment. Section 488 was also added to provide for a 5% handling fee due to the dealer, based on the net current price of the repair parts, unless the manufacturer elected to perform the inventorying, packing and transportation of the repair parts. It was in this form that the Act was finally passed. 1975 La.Acts 283.

CONCLUSION
The courts below erred in interpreting section 487 as imposing a 100% penalty for the failure to reimburse the dealer within sixty days. Under our law, such penalties are not allowed absent statutory authorization. Historically, when the legislature chooses to impose a penalty it does so in a clear and unequivocable manner. This is not the case here.
The term "damages," as used in section 487, should be construed as the term is generally understood; that is, as compensating the dealer for his loss. In section 487 the legislature has statutorily defined that loss in the event the manufacturer has delayed payment beyond sixty days. The dealer is compensated for the goods returned, receiving 100% of the net current price for repair parts instead of the 90% otherwise mandated. Also, for every day *1044 the manufacturer delays payment the dealer is compensated for that delay by the payment of interest. Nothing in the legislative history indicates the need for the draconian penalty imposed by the court of appeal, or that the legislature intended to create or even considered such a penalty. When all the provisions of the Act are read together and viewed in light of the legislative history, there is no ambiguity. The statute simply does not impose a 100% penalty, in addition to requiring reimbursement for the equipment and parts.
The judgment of the court of appeal insofar as it upholds the return of the overpayment to IHCC is affirmed. The judgment in all other respects is reversed and the claims of the Seale defendants are dismissed.
AFFIRMED IN PART; REVERSED IN PART.
DIXON, C.J., dissents.