STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

GEORGE RAYMOND WILLIAMS, M.D., ET AL.

VERSUS

SIF CONSULTANTS OF LOUISIANA, INC., ET AL.

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 09-C-5244-C
HONORABLE ALONZO HARRIS, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

JOHN D. SAUNDERS
JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Jimmie C. Peters, Judges.

AFFIRMED.

Peters, J., concurs in the result.

John Stanton Bradford
William B. Monk
Stockwell, Sievert, Viccellio, Clements, & Shaddock, L. L. P.
P. O. Box 2900
Lake Charles, LA 70602
(337) 436-9491
COUNSEL FOR PLAINTIFF/APPELLEE:
     George Raymond Williams, M. D.
     Orthopaedic Surgery, A ProfessionalMedical, L. L. C.

**Charles Thach Curtis  Jr.**
**Gerard George Metzger**
**Attorney at Law**
**829 Baronne Street**
**New Orleans, LA 70113**
**(504) 581-9322**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Med-Comp USA, Inc.**

**Harry Alston Johnson, III**
**Phelps, Dunbar, L. L. P.**
**400 Convention St., Suite 1100**
**Baton Rouge, LA 70802**
**(225) 346-0285**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Executive Risk Specialty Ins. Co.**

**Patrick Craig Morrow, Sr.**
**James P. Ryan**
**Morrow, Morrow, Ryand, & Bassett**
**P. O. Box 1787**
**Opelousas, LA 70570**
**(337) 948-4483**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
**George Raymond Williams, M. D.**
**Orthopaedic Surgery, A ProfessionalMedical, L. L. C.**

**Randall Kurt Theunissen**
**Michael Edward Parker**
**D. Paul Gardner, Jr.**
**Allen & Gooch**
**P. O. Box 81129**
**Lafayette, LA 70598-1129**
**(337) 291-1000**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Homeland Ins. Co. of New York**

**Steven William Usdin**
**Edward R. Wicker, Jr.**
**Stephen L. Miles**
**Barrasso, Usdin, Kupperman, Freeman, & Sarver**
**909 Poydras St., #2400**
**New Orleans, LA 70112**
**(504) 589-9700**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Executive Risk Specialty Ins. Co.**

**Michael Kevin Cox**
**Thomas Allen Filo**
**Cox, Cox, Filo, Camel & Wilson**
**723 Broad St.**
**Lake Charles, LA 70601**
**(337) 436-6611**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **George Raymond Williams, M. D.**
     **Orthopaedic Surgery, A ProfessionalMedical, L. L. C.**

**Stephen B. Murray**
**Stephen B. Murray, Jr.**
**Arthur M. Murray**
**Nicole A. Ieyoub-Murray**
**Murray Law Firm**
**650 Poydras St., Suite 2150**
**New Orleans, LA 70130**
**(504) 525-8100**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **George Raymond Williams, M. D.**
     **Orthopaedic Surgery, A ProfessionalMedical, L. L. C.**

**Michael J. Rosen**
**Boundas, Skarzynksi, Walsh, & Black, L. L. C.**
**200 E. Randolph, Suite 7200**
**Chicago, IL 60601**
**(312) 946-4200**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Homeland Ins. Co. of New York**

**SAUNDERS, Judge.**

This is a class action wherein the plaintiff class was granted a partial motion for summary judgment on the issue of coverage. After a de novo review of the record, we find that policy issuer's appeal is without merit and affirm the trial court's judgment that the plaintiff class is entitled to its motion for partial summary judgment that the policy provides coverage to the claims asserted by the plaintiff class.

## FACTS AND PROCEDURAL HISTORY:

The plaintiff class of medical providers filed suit against Executive Risk Specialty Insurance Company (Executive Risk) and Homeland Insurance Company of New York (Homeland) under the direct action statute. Executive Risk and Homeland had each issued a claims-made errors and omissions policy to CorVel, Corp. (CorVel) during consecutive time periods. Executive Risk issued policies to CorVel for annual periods from October 31, 1999, to October 31, 2005. Homeland issued policies for annual periods rom October 31, 2005, to present. CorVel settled with the plaintiff class for failure to comply with the mandatory notice provisions of billing discounts in the Louisiana PPO Act, La.R.S. 40:2203.1.

After the trial court certified the plaintiff class, a partial motion for summary judgment was filed by the plaintiff class on the issue of coverage by the Executive Risk policies. The trial court granted the motion.

Executive Risk appealed the judgment. They alleged that the trial court's grant of partial summary judgment was premature because it had outstanding discovery propounded to the plaintiff class. Further, Executive Risk alleged that the trial court's grant of partial summary judgment was improper because: it was based entirely on an untested document never before produced in this case; the trial court incorrectly found that a claim existed against CorVel during Executive Risk's

policy period; the trial court never made a necessary determination that any claim against CorVel relates to any other later claims; the trial court improperly found that the relief sought by the plaintiff class under Title 40 was not a penalty, and; the trial court failed to give full faith and credit to a Delaware judgment. Finally, Executive Risk alleged that the trial court improperly found coverage under Executive Risk's policy where CorVel failed to notify Executive Risk of any claim under Title 40 and where CorVel settled its alleged liability with the plaintiff class without ever notifying or obtaining consent from Executive Risk.

## ASSIGNMENTS OF ERROR:

1.    The trial court improperly granted summary judgment before there was any discovery on insurance coverage issues – *e.g.*, the types of any "Claims," the dates of any "Claims," and whether a "Claim" even exists under the Policy. Indeed, the plaintiff class failed and refused to respond to discovery requests issued by Executive Risk on the disputed factual issues, and instead on summary judgment ambushed Executive Risk with evidence that requires full and complete discovery. Summary judgment was premature.

2.    The trial court improperly granted summary judgment based solely on argument by the plaintiff class. The plaintiff class failed to present any competent evidence – whether through an affidavit or other sworn testimony – to prove coverage. The plaintiff class presented no evidence that a Title 23 or other action against CorVel ever truly existed during the Policy period, and presented no evidence that any "Claim" against CorVel related to another later "Claim." In fact, the trial court never made a determination that any "Claim" against CorVel related to another later "Claim."

3.    The trial court improperly determined that the relief sought by the plaintiff class under Title 40 is not a penalty, and instead constitutes covered statutory damages covered under the Policy. The trial court's holding is out of step with Louisiana appellate courts, including the Third Circuit, and federal courts which repeatedly and consistently have characterized the relief under Title 40 as an uninsured penalty. It also directly contradicts the earlier-rendered Delaware Action Opinion, which has preclusive effect here, involving the very same issues, policies, and parties.

4.    The trial court erred in finding coverage because CorVel failed to notify Executive Risk of any "Claim" under Title 40. It is a condition precedent to coverage that a "Claim" be made within the Policy period and reported to Executive Risk no later than 90 days after the

2

end of the Policy period. It is undisputed that CorVel failed to satisfy this condition, and thus under Louisiana Supreme Court jurisprudence, there is no coverage under the Policy.

5.    Even if a "Claim" exists, the trial court erred in finding coverage because CorVel settled its alleged liability with the plaintiff class without ever notifying or obtaining the consent of Executive Risk, in clear violation of the terms of the Policy. As a result, there is no coverage.

## DISCUSSION OF THE MERITS:

Executive Risk presents various arguments in its five assignments of error as to why the plaintiff class' partial summary judgment should not have been granted. We will address these arguments under one heading as each issue raised is subject to the same standard of review and requests the reversal of the trial court's grant of the plaintiff class' motion for partial summary judgment.

The standard of review applicable when an appeal is taken from a granted motion for summary judgment is de novo. *Covington v. McNeese State Univ.*, 08-505 (La.App. 3 Cir. 11/5/08), 996 So.2d 667, *writ denied*, 09-69 (La.3/6/09), 3 So.3d 491. Louisiana Code of Civil Procedure Article 966(A)(2) states that "[t]he summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. . . . The procedure is favored and shall be construed to accomplish these ends." Under La.Code Civ.P. art. 966(B)(2), a motion for summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." Louisiana Code of Civil Procedure Article 966(C)(2) outlines the burden of proof that a party must carry in order to have a motion for summary judgment granted. It states:

> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's

3

burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

La.Code Civ.P. art. 966(C)(2).

Here, the plaintiff class was granted a motion for partial summary judgment against Executive Risk on the issue of coverage. The trial court found that the Executive Risk errors and omissions policies provided coverage for the plaintiff class' claims which it asserted. As such, we will review whether that policy does provide for coverage of the claims asserted by the plaintiff class.

> An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. If the words of the policy are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and the agreement must be enforced as written. An insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. The policy should be construed as a whole and one portion thereof should not be construed separately at the expense of disregarding another. If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer who issued the policy and in favor of the insured.

*Crabtree v. State Farm Ins. Co.*, 93-509, p. 6 (La. 2/28/94), 632 So.2d 736, 741 (citations and footnotes omitted). Contrarily, a policy's exclusionary provisions are strictly construed and the burden to prove that a loss comes within an exclusion is on the insurer. *Bennett v. State Farm Ins. Co.*, 03-1195 (La.App. 3 Cir. 5/24/04), 869 So.2d 321.

Louisiana Revised Statutes 40:2203.1, entitled Prohibition of certain practices by preferred provider organizations, states:

4

A. Except as otherwise provided in this Subsection, the requirements of this Section shall apply to all preferred provider organization agreements that are applicable to medical services rendered in this state and to group purchasers as defined in this Part. The provisions of this Section shall not apply to a group purchaser when providing health benefits through its own network or direct provider agreements or to such agreements of a group purchaser.

B. A preferred provider organization's alternative rates of payment shall not be enforceable or binding upon any provider unless such organization is clearly identified on the benefit card issued by the group purchaser or other entity accessing a group purchaser's contractual agreement or agreements and presented to the participating provider when medical care is provided. When more than one preferred provider organization is shown on the benefit card of a group purchaser or other entity, the applicable contractual agreement that shall be binding on a provider shall be determined as follows:

(1) The first preferred provider organization domiciled in this state, listed on the benefit card, beginning on the front of the card, reading from left to right, line by line, from top to bottom, that is applicable to a provider on the date medical care is rendered, shall establish the contractual agreement for payment that shall apply.

(2) If there is no preferred provider organization domiciled in this state listed on the benefit card, the first preferred provider organization domiciled outside this state listed on the benefit card, following the same process outlined in Paragraph (1) of this Subsection shall establish the contractual agreement for payment that shall apply.

(3) The side of the benefit card that prominently identifies the name of the insurer, or plan sponsor and beneficiary shall be deemed to be the front of the card.

(4) When no preferred provider organization is listed, the plan sponsor or insurer identified by the card shall be deemed to be the group purchaser for purposes of this Section.

(5) When no benefit card is issued or utilized by a group purchaser or other entity, written notification shall be required of any entity accessing an existing group purchaser's contractual agreement or agreements at least thirty days prior to accessing services through a participating provider under such agreement or agreements.

C. A preferred provider organization agreement shall not be applied or used on a retroactive basis unless all providers of medical services that are affected by the application of alternative rates of payment receive written notification from the entity that seeks such an arrangement and agree in writing to be reimbursed at the alternative rates of payment.

D. In no instance shall any provider be bound by the terms of a preferred provider organization agreement that is in violation of this Part.

E. Any claim submitted by a provider for services provided to a person identified by the provider and a group purchaser as eligible for alternative rates of payment in a preferred provider agreement shall be subject to the standards for claims submission and timely payment according to the provisions of Subpart B of Part II of Chapter 6 of Title 22 of the Louisiana Revised Statutes of 1950.

F. A group purchaser establishing a preferred provider organization shall be prohibited from charging a credentialing fee or any other type of monetary fee, when no access to a group purchaser is provided. Any provider who participates in a preferred provider organization may be charged a reasonable fee either on a periodic basis or based on the tangible benefits received from continued participation in a preferred provider organization. Such fees may be based on actual utilization of alternative rates of payment by group purchasers or other authorized entities or other reasonable basis other than membership.

G. Failure to comply with the provisions of Subsection A, B, C, D, or F of this Section shall subject a group purchaser to damages payable to the provider of double the fair market value of the medical services provided, but in no event less than the greater of fifty dollars per day of noncompliance or two thousand dollars, together with attorney fees to be determined by the court. A provider may institute this action in any court of competent jurisdiction.

Executive Risk's policy that it issued to CorVel includes the following

definitions:

> **"Claim"** means any written notice received by any Insured that a person or entity intends to hold an Insured responsible for a Wrongful Act. . . . [s]uch notice may be in the form of an arbitration, mediation, judicial, declaratory or injunctive proceeding. A Claim will be deemed to be made when such written notice is first received by any Insured.

> **"Loss"** means Defense expenses and any monetary amount which an Insured is legally obligated to pay as a result of a Claim. . . . This paragraph shall be construed under the applicable law most favorable

6

to the insurability of such fines, penalties, and punitive, exemplary or multiplied damages. Loss- shall not include:

>1. except as expressly set forth above, fines, penalties, taxes, and punitive, exemplary or multiplied damages;
>
>2. fees, amounts, benefits or coverage owed under any contract, health care plan or trust, insurance or workers' compensation policy or plan or program of self-insurance;
>
>3. non-monetary relief or redress in any form, including without limitation the cost of complying with any injunctive, declaratory or administrative relief; or
>
>4. matters which are uninsurable under applicable law.

**"Related Claims"** means all Claims for Wrongful Acts based on, arising, out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions or events, whether related logically, causally or in any other way.

Executive Risk's first contention is that the language of its policy excludes La.R.S. 40:2203.1(G) damages as sought by the plaintiff class. We find no merit to this contention.

The language of Executive Risk's policy clearly excludes "fines, penalties, taxes, and punitive, exemplary or multiplied damages." It is equally clear that the policy does not exclude statutory damages. The plaintiff class asserts that the damages in La.R.S. 40:2203.1(G) are statutory damages while Executive Risk asserts that the damages are punitive in nature.

A statute is first interpreted according to its plain language. *Cleco Evangeline, L.L.C. v. La. Tax Comm'n*, 01-2162 (La. 4/3/02), 813 So.2d 351. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La.Civ.Code art. 9.

The language of La.R.S. 40:2203.1(G) denotes that a violator is subject to pay "damages" and includes no language regarding penalties. Further, the

7

language of Executive Risk's policy is that it will pay "any monetary amount which an Insured is legally obligated to pay as a result of a Claim." While there are exclusions listed thereafter, those exclusions do not include a monetary amount that is a statutory damage or a damage punitive in nature. Accordingly, we find no merit to Executive Risk's first contention and find that its policy covers the damages and attorney's fees sought by the plaintiff class.

Second, Executive Risk asserts that the plaintiff class failed to show that any claim, as defined by its policy, was made against CorVel during the time its policy was in effect. Executive Risk issued policies to CorVel for annual periods from October 31, 1999, to October 31, 2005. A claim under those policies is defined as "any written notice received by any Insured that a person or entity intends to hold an Insured responsible for a Wrongful Act."

The plaintiff class submitted into evidence, without objection, a letter dated May 17, 2005, addressed to CorVel's district manager from the State of Louisiana's Office of Risk Management (ORM). The following is written in that letter:

> The ORM is now on notice that certain claims have been filed against this agency as a direct result of actions and recommendations by CorVel to the ORM, all of which actions and recommendations are contemplated and covered by the captioned contracts. To date, and to the best knowledge of the ORM, there are a total of eighty-one (81) such claims. The ORM is informed, and thus states and believers [sic], that an unknown number of such additional and similar claims have been or may be filed.

> The ORM now therefore calls upon CorVel for an immediate defense, and for indemnity in these matters, including claims made, and those yet to be filed, and for CorVel to hold harmless the ORM and the State of Louisiana in all respects. In that regard, demand is further made for reimbursement for all costs and expenses, including attorney's fees, expended to date by the ORM.

The plain language in Executive Risk's policy necessitates that letter fits under the definition of a claim. It is written notice received by an insured, CorVel,

8

that an entity, the State of Louisiana through the ORM, intended to hold an insured, CorVel, responsible for a wrongful act.

Executive Risk asserts that this letter is insufficient to be considered a claim under its policy because the letter is unauthenticated and it references claims filed under Title 23 rather than under Title 40. We are not persuaded by these two assertions.

"The general rule is that a rule of evidence not invoked is waived, and, hence, a failure to object to evidence waives the objection to its admissibility." *Ratcliff v. Normand*, 01-1658, pp. 6–7 (La.App. 3 Cir. 6/5/02), 819 So.2d 434, 439. "To preserve an evidentiary issue for appellate review, it is essential that the complaining party enter a contemporaneous objection to the evidence or testimony, and state the reasons for the objection." *LaHaye v. Allstate Ins. Co.*, 570 So.2d 460, 466 (La.App. 3 Cir. 1990), *writ denied*, 575 So.2d 391 (La.1991) (citing *Pitts v. Bailes*, 551 So.2d 1363 (La.App. 3 Cir.), *writs denied*, 553 So.2d 860 (La.1989), 556 So.2d 1262 (La.1990)).

Executive Risk did not object to the letter being entered into evidence. Thus, they have waived any objection to the letter's authenticity.

Further, there is no language in the letter indicating whether the claims filed against the ORM are under Title 23 or Title 40. Regardless, the plain and unambiguous language of Executive Risk's policy in defining a claim does not indicate that this distinction is relevant. While Executive Risk points out that the plaintiff class admits that CorVel was named in error in the actions under Title 23, the policy's definition of claim only requires that "a person or entity" have intent to hold CorVel responsible. That "person or entity" in the letter was the State of Louisiana through the ORM, not the plaintiff class.

9

Executive Risk also argues that its policy doesn't provide coverage because CorVel did not timely notify it of the claim and CorVel settled with the plaintiff class without getting consent. These are potential defenses of Executive Risk against CorVel and cannot defeat claims brought via La.R.S. 22:655, Louisiana's direct action statute, such as done by the plaintiff class. *Murray v. City of Bunkie*, 96-297 (La.App. 3 Cir. 11/6/96), 686 So.2d 45, *writ denied*, 97-514 (La. 5/9/97), 693 So.2d 767; *Gorman v. City of Opelousas*, 12-1468 (La.App. 3 Cir. 5/18/13), ___ So.3d ___ (unpublished opinion).

Given the above, we find no merit to Executive Risk's second assertion that the plaintiff class failed to show that any claim, as defined by its policy, was made against CorVel during the time its policy was in effect. The evidence in the record indicates that the damages under La.R.S. 40:2203.1 were covered by Executive Risk's policy and that notice of a claim against CorVel was received by CorVel while Executive Risk's policy was in effect.

Finally, Executive Risk argues that the partial summary judgment was granted prematurely. We do not agree.

Executive Risk raised and successfully argued an argument for summary judgment in a Delaware proceeding on whether it owed coverage to CorVel. That proceeding dealt with nearly identical issues. Thus, we agree with the trial court that the plaintiff class' motion for partial summary judgment was ripe for adjudication.

**CONCLUSION:**

After a de novo review of the record, we find that Executive Risk's appeal is without merit. As such, we affirm the trial court's judgment that the plaintiff class is entitled its partial motion for summary judgment that Executive Risk's policy

provides coverage to the plaintiff class' claims.  We cast Executive Risk with all costs of this proceeding.

**AFFIRMED.**