STRINE, Chief Justice,
dissenting, with BOUCHARD, Chancellor, joining:
We share the Majority Opinion’s desire to respect principles of comity and to avoid *871 conflicting rulings. We respectfully dissent, however, from the Majority Opinion’s view that by reversing the Superior Court’s careful determination of the insurance coverage issues properly before it, our Court would be failing to accord comity to our esteemed judicial colleagues in Louisiana. The record is clear that the Superior Court rendered its decision on coverage well before the Louisiana trial court issued its ruling on that same issue.[27] And unlike the Louisiana Court or the Majority Opinion, the Superior Court recognized that the proper analysis to determine coverage under a contract starts with the language of the contract itself. This case thus does not depend principally on the interpretation of a Louisiana statute, but instead turns on the meaning of a contract that the parties to this appeal do not dispute should be interpreted based on Delaware contract law principles.
The issues at stake in this case and its companion, First Health v. Chartis, make little sense without understanding the full context behind this appeal. The underlying claims for which insurance coverage •was sought arise of the so-called PPO industry. A PPO, short for Preferred Provider Organization, essentially acts as an intermediary between health insurance companies and medical providers, including hospitals and individual doctors. The PPO creates a network of providers who agree to receive a reduced payment for treating patients covered by the insurers.
This case and First Health’s arose from litigation brought by multiple groups of medical providers in Louisiana alleging that a number of PPO owners and operators, including CorVel and First Health, were violating La. R.S. § 40:2203.1, the “PPO Act,” by improperly discounting payments for medical services without providing adequate notice to providers. The Act requires that before PPOs can discount payments to health care providers, either the patient must present a benefit card identifying the PPO at the time of service or the provider must agree in writing to receive the discounted rate.[28] The provider plaintiffs alleged that the PPOs had failed to provide the required notice for services provided to workers’ compensation patients. The plaintiffs sought the remedies established in Section G of the Act: “damages payable to the provider of double the fair market value of the medical services provided, but in no event less than the greater of fifty dollars per day of noncompliance or two thousand dollars, together with attorney fees to be determined by the court.”[29]
The cases now before us are one step removed from those underlying claims. They focus on a different but related issue; namely, whether the PPOs’ insurers owe the PPOs reimbursement for the medical providers’ claims.
CorVel faced legal action for allegedly discounting payments in violation of the PPO Act from two sets of providers. First, Lake Charles Memorial Hospital brought a class arbitration against CorVel in 2006.[30] While that case was pending, *872 another plaintiff, George Raymond Williams, M.D., sued PPO owners and operators on behalf of the same class of providers in a Louisiana trial court (the “Williams litigation”).[31] CorVel was eventually added as a defendant to that suit. Under Louisiana law, plaintiffs can pursue claims directly against insurers in certain circumstances.[32] Accordingly, CorVel’s two insurers, Homeland and Executive Risk, were also named as defendants. Because the Lake Charles arbitration and the Williams litigation involved identical claims on behalf of the same class of providers (the “Provider Plaintiff Class”), CorVel was able to resolve both actions with a global settlement for $9 million and an assignment of its insurance rights, which the Louisiana District Court approved in November 2011. But both Homeland and Executive Risk remained parties to the litigation. Put plainly, what CorVel did was to pay $9 million and then unleash the Provider Plaintiff Class to proceed directly against its insurers, Homeland and Executive Risk, as if the Provider Plaintiff Class had the same contractual rights as an insured as CorVel.
A separate set of providers brought suit against another group of PPO owners and operators, including First Health, in 2004.[33] First Health eventually settled with that plaintiff class (the “Settlement Class”) for $150.5 million and an assignment of its insurance rights.[34] That is, yet another PPO defendant paid money and then gave the medical provider plaintiffs the right to go directly against their insurers as an assignee.
Both CorVel and First Health had multiple layers of insurance coverage under Errors & Omissions policies at the time of the alleged wrongdoing that they contend should cover the underlying claims. As noted, CorVel’s coverage was provided by Executive Risk and Homeland; First Health’s by four different companies, including Chartis. In September 2009, one of First Health’s insurers filed suit in the Delaware Superior Court, seeking a declaration that it had no duty to indemnify First Health under its policy for any claims related to the Louisiana litigation. After First Health settled that litigation, in part by unleashing the plaintiff class to sue its insurers under an assignment, the Settlement Class was added to the Delaware action against First Health as the real party in interest.
The Settlement Class moved for partial summary judgment on the issue of coverage on April 3, 2012, contending that the underlying claims constituted damages, which were covered under the contract. Chartis agreed that there were no material issues of fact to be decided, and cross-moved for partial summary judgment, contending that the claims were instead for penalties, which were excluded.[35] The Superior Court held a hearing on the motions on June 13, 2012, and issued an opinion denying the Settlement Class’ motion and *873 granting Chartis’ motion for partial summary judgment on May 7, 2013. After conducting a thorough analysis of the insurance contract at issue, the Superior Court found that the policies were unambiguous, and the providers’ claims under the PPO Act constituted penalties, not damages, and were therefore not covered.[36]
Litigation between CorVel and its insurers moved along a parallel track. In January 2011, Homeland brought a claim in the Delaware Superior Court seeking a declaration that the underlying claims for violations of the PPO Act were not insurable losses under its policy because they were penalties, not damages. Executive Risk was granted leave to intervene. Both insurers moved for partial summary judgment, arguing that there were no material facts in dispute.[37] Unlike in First Health’s case, CorVel opposed both motions and argued that there were material facts remaining to be decided. Focusing on the terms used by the PPO Act rather than the language of the policies at issue, CorV-el argued that under Louisiana law, the medical providers’ claimed remedies were damages, not penalties. But CorVel claimed that, at a minimum, the policy exclusions were ambiguous, and thus summary judgment was inappropriate. The Superior Court heard arguments on January 31, 2018, and issued its opinion granting the insurance companies’ motions on June 13. Just as in First Health’s case, the court carefully analyzed the relevant insurance policies and determined they were unambiguous in excluding the underlying claims as penalties.[38] The Settlement Class and CorVel then both appealed to this Court.
Back in Louisiana, on May 24, 2014, after the Delaware Superior Court had issued its decision in First Health’s case, but while the decision in CorVel’s case was pending, the Provider Plaintiff Class moved for partial summary judgment against Executive Risk in the Williams litigation. Although technically the Provider Plaintiff Class is a separate party from CorVel, they share at least some of the same attorneys, and there is no question that they have acted in coordination throughout this litigation. Likewise, CorVel and the First Health Settlement Class have the same attorneys and their briefing on appeal to this Court was substantively identical.
After the Delaware Superior Court issued its June 13 decision in CorVel’s case, granting summary judgment to Executive Risk and Homeland, the Louisiana trial court in Williams held a hearing on the Provider Plaintiff. Class’ motion on June 28. Rather than defer to the Delaware Superior Court’s well-reasoned rulings on the identical coverage issues, the Louisiana court granted the motion for summary judgment on July 29, holding that under the PPO Act, the remedies available to providers were damages, not penalties. The Louisiana Third Circuit Court of Appeal affirmed the trial court’s ruling on February 26, 2014.[39] At that point, Execu *874 tive Risk settled with the Provider Plaintiff Class and was dismissed from CorVel’s appeal then pending before this Court.
Without quibbling in any way with the Louisiana Court’s description of the Louisiana statute that apparently motivated its decision on the relevant coverage issues, we still find it impossible to reverse the Delaware Superior Court in the appeal pending before this Court. The reasons for that are simple: the Superior Court did not ignore principles of comity or commit any error of contract law. As to the first issue — comity—the Superior Court considered an issue properly put to it in advance of any. requested ruling on that issue by the Louisiana trial court. As to the second, the Superior Court did not understand the Louisiana statute to operate any differently than .the Williams court did. But the Superior Court, unlike the Williams court or the Majority Opinion, gave meaning and effect to the core contractual terms the parties had agreed to. The Superior Court’s legal conclusions on that score were well-supported by respected authority,[40] applying relevant principles of contract interpretation that are embraced by our courts and by most jurisdictions.[41]
The Superior Court’s analysis was faithful to the text of La. R.S. § 40:2203.1, but properly recognized that the label the Louisiana statute used did not determine whether the substance of what the underlying medical provider claimants obtained were “damages” within the terms of the insurance contract — which would be covered — or ■ “penalties” — which would not. The meaning of terms in insurance policies like the one involved here have to govern the operation of companies doing business in many jurisdictions. As a result, the claims that arise under various jurisdictions must be analyzed to determine whether they fall within the insurance contract’s coverage or within excluded categories. That requirement of proper contract analysis does not change, regardless of whether the jurisdiction takes a common law or civil law approach in interpreting its statutes.
In conducting the appropriate contractual analysis, it is important that the nature of the underlying claim and the law governing it be understood. But the disposi-tive question of law is what the contractual terms mean, which here the parties do not dispute is governed by Delaware, not Louisiana, law.[42] In other words, the issue is not what a state’s particular statute calls the remedy, or how that state’s courts *875 would interpret the statute; the question is whether the remedy afforded by the statute in fact amounts to covered damages or excluded penalties as those terms are used in the parties’ contract. In all controversies arising under the policy, regardless of the location of the underlying claim, the contract definition governs. The Williams decision ignored that reality and made no attempt to give any weight to the contract or .even consider the Superior Court’s careful ruling on that subject. In doing so, the Louisiana Court failed to give comity to our state.[43]
The Majority Opinion, like the Williams court’s decision, does not point to any errors in the Superior Court’s analysis of the contract at issue. That is because, as the Superior Court found, the plain language in the contract is unambiguous. CorVel’s policy with Homeland defines “loss” as:
any monetary amount which an Insured is legally obligated to pay as a result of a Claim. Loss shall include ... punitive, exemplary or multiplied damages where insurable by law, provided, that the law of the jurisdiction most favorable to the insurability of punitive damages shall control the insurability of such punitive damages....
Loss shall not include: (i) fines, penalties or taxes; provided that (A) punitive damages shall not be deemed to constitute fines, penalties or taxes for any purpose herein, and (B) Loss shall include fines and penalties imposed under the Health Insurance Portability and Accountability Act or in Claims for Antitrust Activity. .. ,[44]
The policy thus makes clear that penalties are not covered, unless they are penalties related to “Antitrust Activity.”[45] CorVel’s arguments about the proper way to interpret insurance coverage or exclusions of coverage are therefore irrelevant; the only relevant question is whether the underlying claims are for penalties.
As the Superior Court properly determined, when the language in a contract is “clear and unambiguous,” we should give it “its ordinary and usual meaning.”[46] Black’s Law Dictionary[47] defines penalty as “a sum of money exacted as punishment for either a wrong to the state or a civil wrong (as distinguished from compensation for the injured party’s loss). Though [usually] for crimes, penalties are also sometimes imposed for civil wrongs.”[48] A civil penalty is defined as a “fine assessed for a violation of a statute or regulation.” A statutory penalty is a “penalty imposed for a statutory violation; [especially], a penalty imposing automatic liability on a *876 wrongdoer for violation of a statute’s terms without reference to any actual damages suffered.”[49] By contrast, damages are defined as “money claimed by, or ordered to be paid to, a person as compensation for loss or injury.”[50] In the analogous contract law context, this Court has defined “penalty” as “a sum ... that serves as a punishment for default, rather than a measure of compensation for its breach. In other words, it is an agreement to pay a stipulated sum upon breach, irrespective of the damage sustained.”[51]
Here, it is not disputed that the remedy scheme under the PPO Act bears no relationship to any actual damages suffered by the medical provider plaintiffs. Indeed, the Act itself makes no effort to tie the remedy to actual losses; the “damages payable to the provider” are “double the fair market value of the medical services ;provided,”[52] not, for example, double the sum of the improper discount. The statute unambiguously imposes “automatic liability on a wrongdoer for violation of a statute’s terms without reference to any actual damages suffered,”[53] or the dictionary definition of a statutory penalty.
In making its determination of coverage based on the contract at issue in this case, the Superior Court was respectful of Louisiana authority, including the Louisiana Supreme Court and the U.S. Court of Appeals for the Fifth Circuit,[54] and its understanding of the statute accords with how other courts in Louisiana have viewed the remedies available.[55] But contrary to the Majority Opinion, the Superior Court did not rely on these cases to interpret the statute as a matter, of common law; rather, it cited Louisiana precedent as evidence to support its understanding of how the statute operated and whether the statute imposed penalties within the meaning of the term used in the parties’ contract. That is, what the Superior Court properly did was to interpret an insurance contract’s language, using traditional tools of contract interpretation. That was the judicial task the case assigned it. As the Superior Court found by reference to established authority,[56] the amount of damages set forth in the statute bears no relationship to the harm suffered by any provider and thus was not of the kind considered “remedies” in the normal sense *877 in which parties use terra in contracts.[57] Thus, the Superior Court did not rely on the fact that the Act awards remedies in a manner consistent with what other Louisiana courts have historically termed to be penalties, including in an important Louisiana Supreme Court casé cited by the Williams court,[58] but instead noted that reality to corroborate its own correct reading of the Louisiana statute in relation to the parties’ contract.
Had the Louisiana trial court itself showed comity by staying its hand after the Delaware Superior Court made the first ruling on the coverage issue and letting this case run its course to finality, the conflict the Majority Opinion is trying to avoid would not have arisen in the first instance. Because the jurisdiction of our Superior Court was properly invoked, and the Superior Court issued its ruling first, the Provider Plaintiff Class’ decision to pursue a new ruling on that same issue in another forum and the decision of the Louisiana courts to issue that ruling has caused the current logjam and any awkward comity issue that has arisen as a result. The party that fairly prevailed on its motion for summary judgment has now lost all benefit from its trial court victory, and will receive no recompense from the defendant for its costs in obtaining that victory or for litigating this appeal. Those costs have been sunk for no purpose.
Moreover, by reversing on the grounds of comity to the Louisiana court’s decision as to Executive Risk, we are subjecting Homeland to the additional costs of litigating the issues anew in Louisiana. When Executive Risk lost at the trial court and at the first appellate level in Louisiana, it settled with the Provider Plaintiff Class and left the decision in Williams unappealable.[59] But the ruling that the Provider Plaintiff Class obtained in that action should not run against Homeland, because the Class did not seek summary judgment against — and therefore did not obtain a judgment against — Homeland.[60]
Attempting to justify the Louisiana trial court’s decision to render a ruling on the coverage issues more than six weeks after the Superior Court, the Majority Opinion asserts that litigation against CorVel had been in progress in Louisiana many years before the Delaware suit was filed against it. The fact of the matter, however, is that Homeland was not named as a party in the Williams litigation in Louisiana until March 24, 2011 — more than two months after it filed suit in the Superior Court on January 10, 2011. The principals may have been embroiled in litigation in Louisiana many years earlier, but the record plainly shows that the coverage issues un *878 der Homeland’s policy were first put in issue in Delaware.
Although wé respect and share the desire expressed in the Majority Opinion to avoid inconsistent rulings, we cannot embrace its solution. In our view, this is a situation in which our Superior Court did nothing wrong, but another state’s courts’ failure to show comity to our courts has unnecessarily caused the potential for inconsistent rulings and inefficiency. That might be a rational reason to stand down, as the Majority Opinion has concluded, but it is demonstrably unfair to Homeland. At a minimum, Homeland, as the party who has been victimized by its adversary’s gamesmanship, should be reimbursed for its attorneys’ fees and costs in obtaining a fair victory in our Superior Court and then having its victory taken away, not by a traditional reversal on the merits on appeal, but because this litigation had been rendered useless by collateral litigation to which this Court has now decided to defer. That compensation should include Homeland’s fees and costs spent arguing this appeal. We also hope for the sake of Homeland that our judicial colleagues in Louisiana will look favorably upon Homeland’s right to have the important coverage issues it raised decided on the merits based on what its contract states.
For all these reasons, we respectfully dissent.

.Indeed, the Louisiana trial court’s ruling . referenced the earlier Delaware decision. Compare Homeland Ins. Co. and Executive Risk Specialty Ins. Co. v. CorVel Corp., 2013 WL 3937022 (Del.Super. June 13, 2013) [hereinafter Superior Court Opinion], with Williams v. SIF Consultants of Louisiana, Inc., 2013 WL 7330225 (La.Dist.Ct. July 29, 2013).

. La. R.S. § 40:2203.1(B)-(C).

. La. R.S. § 40:2203.1(G).

. Lake Charles Memorial Hospital initially filed claims with the Louisiana Department of Labor Department of Workers’ Compensation, but CorVel filed suit in Louisiana federal district court to compel arbitration in accordance with the parties' contract.

. George Raymond Williams, MD. v. SIF Consultants of Louisiana, Inc., Dkt. No. 09-C-5244-C, 27th Judicial District Court, Parish of St. Landry.

. See La. R.S. § 22:1269(B)(1). That is, Louisiana law subjects an insurer who has no contractual relationship with the tort plaintiffs to a lawsuit based on the insurance company’s policy with the tort defendant.

. Gunderson v. FA. Richard & Assoc., 2005 WL 5468586 (La. Dist. Ct., June 23, 2005).

. See Gunderson v. F.A. Richard & Assoc., No. 2004-2417 (14th Jud. D.C., Parish of Cal-casieu, State of La., May 27, 2011).

. At that point, Chartis was one of three defendant insurance companies, but the other two eventually settled with the Settlement Class.

. Executive Risk Specialty Ins. Co. v. First Health Group Corp., 2013 WL 1908664 (Del. Super. May 7, 2013).

. Executive Risk moved for summary judgment "on the issues of penalty, restitution, and contract” on Aug. 29, 2012; Homeland moved for partial summary judgment in the same action on the same day.

. See Superior Court Opinion.

. Williams v. SIF Consultants of Louisiana, Inc., 133 So.3d 707 (La.Ct.App.2014). The Louisiana Appeals Court’s decision references the earlier Delaware ruling as evidence that the plaintiff class’ motion for partial summary judgment was ripe for adjudication, but does not otherwise address Executive Risk's claim that the Louisiana trial court’s ruling directly *874 contradicted a previous judgment that should have had preclusive effect. See id.

. See, e.g., Katz v. Oak Industries, 508 A.2d 873, 880 (Del. Ch.1986) (quoting Corbin on Contracts (Kaufman Supp.1984), § 570) ("If the purpose of contract law is to enforce the reasonable expectations of parties induced by promises, then at some point it becomes necessary for courts to look to the substance rather than to the form of the agreement, and to hold that substance controls over form.”).

. See, e.g., ConAgra Foods, Inc. v. Lexington Ins. Co., 21 A.3d 62, 68 (Del.2011) ("This Court has adopted traditional principles of contract interpretation.”).

.The insurance contract at issue did not include a choice of law clause. Although there were several plausible contenders for which state’s law should govern the interpretation of the contract, the Superior Court found that there was no conflict between any of the possible state laws and therefore applied the law of the forum state, Delaware. CorVel did not challenge that determination on appeal. We note that it would aid in our resolution of coverage issues, which are frequently before this Court, if insurance contracts more routinely included choice of law provisions so that the contracting parties themselves could decide upfront whose law should govern.

. See, e.g., Majority Opinion at 868 (quoting Columbia Cas. Co. v. Playtex FP, Inc., 584 A.2d 1214 (Del.1991) ("Comity permits one state to give effect to the laws of a sister state, not out of obligation, but out of respect and deference.”)).

. App. to CorVel Opening Br. at 486-87 (emphasis added).

. If the underlying claims were for antitrust-related penalties, they could also be covered under the unambiguous terms of the policy. But CorVel did not challenge the Superior Court’s finding that the claims asserted in the underlying litigation did not constitute antitrust activity.

. See O’Brien v. Progressive N. Ins. Co., 785 A.2d 281, 288 (Del.2001).

. As the Superior Court noted, dictionaries are an appropriate aid in discerning ordinary meaning. See Superior Court Opinion at *13 (citing Lorillard Tobacco Co. v. Am. Legacy Found., 903 A.2d 728, 738 (Del.2006)) ("It is well-settled in Delaware that, in ascertaining the meaning of words not defined in a contract, courts ‘look to dictionaries for assistance in determining the plain meaning of terms which are not defined in a contract.' ").

. Black’s Law Dictionary 562 (4th Pocket Ed.2011).

. Id.

. Id. at 195.

. Delaware Bay Surgical Services, P.C. v. Swier, 900 A.2d 646, 650 (Del.2006) (quoting S.H. Deliveries v. TriState Courier & Carriage, 1997 WL 817883, at *2 (Del.Super. May 21, 1997)).

. La. R.S. 40:2203.1(G) (emphasis added).

. Id.

. See, e.g., Superior Court Opinion at *18 (citing previous Louisiana decisions referring to the remedies under the statute as penalties).

. See, e.g., Gunderson v. F.A. Richard & Assoc., 44 So.3d 779 (La.Ct.App.2010); Gunderson v. F.A. Richard & Assoc., 40 So.3d 418 (La.Ct.App.2010) (characterizing the remedies under the PPO Act as "penalties”); see also Cent. La. Ambulatory Surgical Ctr., Inv. v. Rapides Parish Sch. Bd., 68 So.3d 1041 (La. Ct.App.2010) (same); Touro Infirmary v. Am. Maritime Officer, 24 So.3d 948 (La.Ct.App. 2009) (same); see also Indian Harbor Ins. Co. v. Bestcomp, Inc., 2010 WL 5471005 (E.D.La. Nov. 12, 2010), aff d, 452 Fed.Appx. 560 (5th Cir.2011) ("damages under section 40.2203.1(G) are excluded from the definition of damages under the policy ... because the damages more than compensate an injured party for losses incurred due to lack of notice.").

.See Superior Court Opinion at *14 (citing Black's Law Dictionary 1247 (9th Ed. 2009), and Landis v. Marc Realty, 235 I11.2d 1, 335 Ill.Dec. 581, 919 N.E.2d 300, 307 (2009)).

. Homeland Ins. Co. and Executive Risk Specialty Ins. Co. v. CorVel Corp., C.A. No. 11C-01-089 (June 13, 2013), at 33.

. See Williams v. SIF Consultants of Louisiana, Inc., 2013 WL 7330225 (La.Dist.Ct. July 29, 2013) (citing International Harvester Credit . Corporation v. Seale, 518 So.2d 1039, 1042 (La. 1988) (describing legislative intent to award penalty or punitive damages “by either denoting the award a 'penalty,' modifying the term ‘damages’ with such language as ‘punitive’ or ‘exemplary,’ or specifically awarding an amount in excess of the claimant’s losses ”) (emphasis added)).

. See Joint Motion and Order of Dismissal, Williams v. SIF Consultants of Louisiana, Inc., No. 09C-5244-C, 27th Jud. District Court, Parish of St. Landry, La. (July 22, 2014).

. See Charles Alan Wright, et al., 18 Fed. Prac. & Proc. Juris. § 4402 (2d ed.) (a non-party who was not fairly represented in a proceeding cannot justly be bound by principles of claim or issue preclusion).