IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CORVEL CORPORATION, | § | |
| | § | No. 513, 2013 |
| Defendant Below- | § | |
| Appellant, | § | Court Below: Superior Court of the |
| | § | State of Delaware, in and for |
| v. | § | New Castle County |
| | § | |
| HOMELAND INSURANCE | § | C.A. No. N11C-01-089 |
| COMPANY OF NEW YORK, | § | |
| | § | |
| Plaintiff Below- | § | |
| Appellee. | § | |

Submitted: December 3, 2014
Decided: March 6, 2015

Before **STRINE**, Chief Justice, **HOLLAND**, **VALIHURA**, and **VAUGHN**, Justices, **BOUCHARD**,* Chancellor, constituting the Court *en Banc*.

Upon appeal from the Superior Court. **REVERSED** and **REMANDED**.

Kevin G. Abrams, Esquire, John M. Seaman, Esquire, (*argued*), Steve C. Hough, Esquire, Abrams and Bayliss LLP, Wilmington, Delaware; Somer G. Brown, Esquire, (*argued*), Cox, Cox, Filo, Camel & Wilson LLC, Lake Charles, Louisiana, for Appellant.

James W. Semple, Esquire, (*argued*), Corrine Elise Amato, Esquire, Morris James LLP, Wilmington, Delaware; Michael J. Rosen, Esquire, Peter F. Lovato, III, Esquire, Boundas, Skarzynski, Walsh & Black, LLC, Chicago, Illinois, for Appellee.

_____

* Sitting by designation under Del. Const. art. IV, § 12.

**VAUGHN**, Justice, for the Majority:

Defendant Below/Appellant, CorVel Corporation ("CorVel"), appeals from an order of the Superior Court granting partial summary judgment in favor of Plaintiff Below/Appellee, Homeland Insurance Company of New York ("Homeland"). The case arises from class actions filed against CorVel and others in the State of Louisiana. In those actions, medical service providers alleged that CorVel violated notice provisions contained in a Louisiana statute known as the Preferred Provider Organizations Act.[1] CorVel eventually entered into a settlement in which it resolved all of the Louisiana litigation.

CorVel was insured under an errors and omissions insurance policy issued by Homeland. The policy had a number of exclusions, one of which was an exclusion for "penalties." The issue in this case is whether the amount that CorVel paid to settle the Louisiana litigation was a "penalty," and, therefore, not a covered loss under the insurance policy. The Superior Court concluded that the amount paid was a "penalty." We have concluded that it was not a "penalty," and that the policy's exclusion for "penalties" does not apply.

---

[1] The act is also known as the "Any Willing Provider Act."

## I.  FACTUAL AND PROCEDURAL HISTORY

CorVel, a Delaware corporation, owns and operates a Preferred Provider Organization ("PPO") network throughout the United States.  As part of its national network, CorVel had PPO agreements with medical providers in Louisiana.  Under the agreements, the medical providers agreed to discount rates on certain medical services.  CorVel also entered into agreements with group workers' compensation payers, such as employers, who utilized CorVel's discounted PPO rates when paying for workers' compensation services.

By statute, the State of Louisiana has approved PPO networks and their discounted rates, but has imposed certain statutory requirements.  One requirement is that the PPO give notice to a medical provider when a discount is to be applied.  The notice provisions of the Louisiana statute can be satisfied in either one of two ways.  One way is by issuing a benefit card to a patient that the patient can then present to the medical provider.  The other way is by issuing a written notice to the medical provider that a certain group purchaser is a PPO participant.

Failure to comply with the notice requirements subjects a PPO to financial consequences under La. R.S. § 40:2203.1(G), which reads as follows:

> Failure to comply with the [notice provisions] of this Section shall subject a group purchaser to damages payable to the provider of double the fair market value of the

medical services provided, but in no event less than the greater of fifty dollars per day of noncompliance or two thousand dollars, together with attorney fees to be determined by the court.

Two class actions were brought against CorVel and others in Louisiana state court alleging that CorVel had failed to comply with the statutory notice provisions. The actions sought damages under La. R.S. § 40:2203.1(G). Both actions made the same allegations and sought the same relief. The first action was captioned *SWLA Hospital Assoc. d/b/a Lake Charles Memorial Hospital v. CorVel* (the "LCMH Arbitration").[2] The second action, filed September 30, 2009, was captioned *George Raymond Williams M.D. Orthopedic Surgery v. SIF Consultants of Louisiana, Inc.* (the "*Williams* Litigation," and together with the LCMH Arbitration, the "Louisiana Litigation").[3] On March 24, 2011, Homeland and Executive Risk Specialty Insurance Co. ("Executive Risk"), another CorVel insurer, were also made parties to the *Williams* Litigation under La. R.S. § 22:1269, which provides that under certain conditions an "injured person . . . shall have a right of direct action against the insurer within the terms and limits of the policy; and, such action may be brought against the insurer alone."[4]

---

[2] *See CorVel Corp. v. Sw. La. Hosp. Ass'n*, 2007 WL 594904 (W.D. La. Feb. 21, 2007) (ordering the parties to enter arbitration for statutory claims under La. R.S. § 40:2203.1).

[3] *Williams v. SIF Consultants of Louisiana, Inc.*, 2013 WL 7330225 (La. Dist. Ct. Jul. 29, 2013).

[4] La. R.S. § 22:1269.

On July 23, 2011, CorVel agreed to settle the Louisiana Litigation and other claims pending before the Louisiana Office of Workers' Compensation for $9 million, including an amount for attorneys' fees payable to plaintiff class counsel. As part of the settlement, CorVel assigned to the plaintiff class its rights under the insurance policy issued by Homeland and Executive Risk.[5]

On January 10, 2011, Homeland filed an action against CorVel in the Delaware Superior Court seeking, among other things, declaratory relief that any amount paid by CorVel to the plaintiff class as a result of the Louisiana Litigation was a "penalty" under La. R.S. § 40:2203.1(G) and not a covered loss under the insurance policy.

The Homeland policy provided, in pertinent part, as follows:

> The Underwriters will pay on behalf of the Insured any Loss which the Insured is legally obligated to pay as a result of any Claim that is first made against the Insured . . . and reported to the Underwriter either during the Policy Period or in any event within ninety (90) days after the end of the Policy Period, in accordance with CONDITION (B) of this Policy.

> "Loss" means . . . Defense Expenses and any monetary amount which an Insured is legally obligated to pay as a result of a claim.

---

[5] Appellant's Op. Br. App. at A265-66 ("CorVel shall assign to the Class any and all of the its rights to: (a) receive any and all proceeds available/awarded pursuant to CorVel's insurance policies with respect to the released claims . . . and (b) pursue declaratory judgment and/or damages action with respect to indemnity coverage under these policies for the released claims.").

5

Loss shall include:

(1) a claimant's attorney's fees and court costs, but only in an amount equal to the percentage that the amount of monetary damages covered under this Policy for any settlement or judgment bears to the total amount of such settlement or judgment . . .

(3) punitive, exemplary or multiplied damages where insurable by law . . .

Loss shall not include:

(1) fines, penalties or taxes; provided that (A) punitive damages shall not be deemed to constitute fines, penalties or taxes for any purpose herein . . . .

Executive Risk sought and received approval to intervene in the Superior Court action filed by Homeland.[6] The Executive Risk policy contained language similar to the Homeland policy, and, of importance to this case, also excluded penalties from coverage.

On June 13, 2013, the Superior Court issued an opinion and order granting summary judgment to Executive Risk and partial summary judgment to Homeland on the ground that the amount that CorVel paid to settle the Louisiana Litigation was a penalty.

When the Superior Court issued its June 13, 2013, opinion, a motion for partial

---

[6] Executive Risk has since settled with CorVel and been dismissed from the case.

summary judgment filed by the plaintiff class against Executive Risk in the *Williams* Litigation was pending in Louisiana. In the motion, the plaintiff class contended that damages under La. R.S. § 40:2203.1(G) were statutory damages and not penalties. Executive Risk contended, as Homeland does here, that the damages under the statute were penalties. Because the insurance policy excluded penalties from the definition of Loss, the insurance company argued that the amount paid by CorVel to the plaintiff class was not covered under the policy issued to CorVel.

On July 29, 2013, almost seven weeks after the Superior Court issued its opinion and order, the Louisiana trial court issued an opinion in the *Williams* Litigation granting the plaintiff class' motion for partial summary judgment and holding that damages under La. R.S. § 40:2203.1(G) are statutory damages, not penalties.[7] Thus, according to the Louisiana trial court, the insurance policy issued to CorVel covered the amount paid to the plaintiff class in the Louisiana Litigation.

Executive Risk appealed the trial court's decision to the State of Louisiana Court of Appeals for the Third Circuit. The appellate court affirmed the trial court's judgment. It also found that damages under La. R.S. § 40:2203.1(G) are statutory damages, or damages punitive in nature, but not penalties.[8] Based on these findings,

---

[7] *Williams v. SIF Consultants of Louisiana, Inc.*, 2013 WL 7330225 (La. Dist. Ct. Jul. 29, 2013).
[8] *Williams v. SIF Consultants of Louisiana, Inc.*, 133 So.3d 707 (La. Ct. App. 2014), *reh'g denied* (Apr. 9, 2014).

7

the appellate court concluded that the settlement amount paid by CorVel was a covered loss under the policy issued by Executive Risk. Executive Risk subsequently settled in that case, and no appeal was taken to the Louisiana Supreme Court from the decision of the appellate court.

Meanwhile, in Delaware, the Superior Court sent a letter to counsel on July 26, 2013, three days before the Louisiana trial court's decision in the *Williams* Litigation was issued, stating that "to the extent there are claims still pending in this litigation, a trial date will be assigned promptly."[9] The Delaware Superior Court requested that each party identify the claims it intended to present at trial and state the number of trial days the party would need.

On August 15, 2013, after the Louisiana trial court's decision in the *Williams* Litigation was issued, counsel for Homeland and Executive Risk wrote to the Delaware Superior Court that no issues remained and that the docket should be marked closed. On August 22, 2013, counsel for CorVel responded with a letter stating that a trial was still necessary on its affirmative defenses -- i.e., that Homeland's denial of coverage was barred by waiver and estoppel. But after further correspondence between the court and counsel, the Superior Court entered an order

---

[9] The judge who issued the June 13, 2013, opinion and order retired shortly thereafter. The July 26, 2013, letter was written by his successor.

on August 27, 2013, closing the case on the docket. In that order, the Superior Court referred to its June 13, 2013, order as its final order and judgment.

On September 3, 2013, CorVel filed a Motion to Alter or Amend the August 27, 2013, order under Superior Court 59(d), or, alternatively, a Motion for Relief from Judgment under Rule 60(b). The Superior Court denied both motions in a September 20, 2013, order. In that order, however, the Superior Court referred to its August 27, 2013, order as its final order.

On September 26, 2013, CorVel filed its appeal to this Court. Homeland filed a Motion to Dismiss the Appeal on the grounds that the Superior Court's final order was its June 13, 2013, opinion and order, and that the appeal was therefore untimely. This Court denied Homeland's motion without prejudice.

## II. DISCUSSION

Homeland has renewed its Motion to Dismiss the Appeal. Homeland argues that the June 13, 2013, opinion and order granted the entirety of the relief it sought, resolved all claims as to all parties, mooted the remaining arguments, and expressed the Superior Court's decision to resolve all of the claims presented. Homeland contends that the trial court's June 13, 2013, opinion and order clearly and unambiguously granted Homeland's motion for summary judgment, holding that there was no coverage for the amount CorVel paid to the plaintiff class to settle the

9

Louisiana Litigation under the insurance policy.

The question of whether an order constitutes a final judgment depends on "whether the judge has or has not clearly declared his intention in this respect in his opinion."[10]   CorVel had pled affirmative defenses.  In June 2012, the Superior Court entered an order that apparently was intended to stay discovery "on issues not resolved through the Court's adjudication of any dispositive motions."  The June 13, 2013, opinion and order did not expressly address affirmative defenses, and it appears that CorVel, at least initially, contemplated proceeding on those defenses after the motion for partial summary judgment was granted.  On this record, we find that the August 27, 2013, order was the Superior Court's final order and that CorVel's appeal was timely filed.

We review a grant of summary judgment *de novo*.[11]  Interpretation of a statute is a question of law, which we also review *de novo*.[12]

"Comity permits one state to give effect to the laws of a sister state, not out of obligation, but out of respect and deference."[13]   We have acknowledged that

---

[10]  *J. I. Kislak Mortgage Corp. v. William Matthews, Builder, Inc.*, 303 A.2d 648, 650 (Del. 1973) (quoting *United States v. F. & M. Schaefer Brewing Co.*, 356 U.S. 227, 232 (1958)).

[11]  *Kelty v. State Farm Mut. Auto. Ins. Co.*, 73 A.3d 926, 929 (Del. 2013) (citing *E. Sav. Bank, FSB v. CACH, LLC*, 55 A.3d 344, 347 (Del. 2012)).

[12]  *Kelty*, 73 A.3d at 929 (citing *Sussex Cnty. Dep't of Elections v. Sussex Cnty. Republican Comm.*, 58 A.3d 418, 421 (Del. 2013)).

[13]  *Columbia Cas. Co. v. Playtex FP, Inc.*, 584 A.2d 1214 (Del. 1991) (quoting 16 Am. Jur. 2d, *Conflict of Laws* § 10, at 28 (1979)).

"important and novel issues of other sovereigns are best determined by their courts where practicable."[14]  Where a foreign statute has been interpreted by courts of the state of its origin, such interpretation should be followed in other states where the statute is applied.[15]  Pursuant to the doctrine of comity, the courts of a sister state should adopt the decision of the highest tribunal of the enacting state concerning construction of the statute.[16]

CorVel argues that, in accordance with the doctrine of comity, we should show deference to the Louisiana appellate court, and adopt its interpretation of La. R.S. § 40.2203.1(G).  We agree.  The Louisiana appellate court considered the same Louisiana statute and analyzed almost identical insurance policy language as that involved in this case.  Because the Louisiana appellate court in the *Williams* Litigation is the highest Louisiana appellate court to construe La. R.S. § 40.2203.1(G), we adopt its reasonable interpretation as our own.  We find that La.

---

[14]  *Martinez v. E.I. DuPont de Nemours and Co., Inc*., 86 A.3d 1102, 1110 (Del. 2014).
[15]  2 Sutherland Statutory Construction § 37:3 (7th ed.) (internal citations omitted). *See, e.g.*, *Kahn v. Pony Express Courier Corp*., 20 P.3d 837, 849 (Or. Ct. App. 2001) (examining decisions of the Montana appellate courts interpreting and applying a Montana statute to determine its intent); *Peterson v. Ely*, 569 P.2d 1059 (Or. 1977) (construing Washington statute in accordance with decisions of Washington Supreme Court); *People ex rel. Shults v. Lombard*, 398 N.Y.S.2d 932 (Co. Ct. 1977) ("The decision of the foreign court of last resort is controlling on the question to be decided by a court of this State, and this is especially true when a question arises with respect to the statute and constitution of the foreign state.") (internal citations omitted)); *King v. Klemp*, 57 A.2d 530, 533 (N.J. Ch. 1947) ("[W]here the construction of a foreign statute is involved, our courts will accept as controlling the interpretation placed thereon by the courts of that state.").
[16]  *See supra* footnote 15.

11

R.S. § 40.2203.1(G) provides for statutory damages, not penalties. Thus, we find that the amount CorVel paid to settle the Louisiana Litigation, including attorneys' fees, is not excluded from the definition of "Loss" by the insurance policy provision that excludes "penalties."

In our view, the Dissent is based upon several flawed premises. The Dissent maintains that the Superior Court rendered its decision well before the Louisiana trial court issued its ruling. In other words, it takes to task the District Court of Louisiana for the 27th Judicial District for not deferring to the Delaware Superior Court. The fact is that the Louisiana Litigation had been in progress for many years prior to the filing of the Delaware suit.[17] The center of this litigation has been in Louisiana and the dispute underlying the Delaware declaratory action arises out of the Louisiana Litigation.

The Delaware suit was filed on January 10, 2011,[18] after the Louisiana Court of Appeals for the Third Circuit affirmed a ruling in another case that had negative

---

[17] In 2004 and 2005, CorVel and LCMH were embroiled in legal action in Louisiana. On December 22, 2006, LCMH instituted a putative class arbitration against CorVel (*Sw. La. Hosp. Ass'n. d/b/a Lake Charles Mem'l Hosp. v. CorVel*). LCMH claimed that CorVel violated Louisiana law, and sought coverage from an insurance policy issued by Homeland. On September 30, 2009, the *Williams* Litigation was filed. The lawsuit claimed the same violation of Louisiana law as claimed by LCMH against CorVel (and against Homeland).

[18] *Homeland Ins. Co., et al. v. CorVel Corp.*, 2013 WL 3937022 (Del. Super. Jun. 13, 2013).

12

implications for the insurance carriers.[19]   Specifically, on June 30, 2010, the

Louisiana Court of Appeals for the Third Circuit affirmed a ruling by the trial court,

in which the trial court stated the following:

> This Court notes from a very basic standpoint that [the Louisiana statute § 40:2203.1(G)] makes no mentions of fines or penalties . . . I believe from a very basic standpoint that damages are covered by the Columbia policy.  No one is arguing that point.
>
> Now, as to whether or not the quote, "damages" being sought by the plaintiffs are in fact civil fines and penalties this Court is of the position that they are not.[20]

Thus, the more compelling conclusion is that the Appellees filed in Delaware when

they saw the handwriting on the wall in Louisiana.

Moreover, there is very little connection to the State of Delaware in this

litigation.   The only nexus with the State of Delaware is CorVel's situs of

incorporation.  CorVel is a Delaware corporation, with its principal place of business

in California.  Homeland is a New York corporation, with its principal place of

business in Massachusetts.  Executive Risk is a Connecticut corporation, with its

principal place of business in New Jersey.

---

[19] *Gunderson v. F.A. Richard & Associates, Inc.*, No. 2004-2417 (14th Jud. Dist. Ct., Parish of Calcasieu, La. Jul. 20, 2007), *aff'd*, 44 So.3d 779 (La. App. 2010); Appellant's Op. Br. App. at A987.
[20] Appellant's Op. Br. App. at A987.

The connection this litigation has with the State of Louisiana is much stronger. Although CorVel is incorporated in Delaware and maintains its headquarters in California, the company owns and operates PPO networks throughout the United States. One of the entities with which CorVel had a PPO agreement was Lake Charles Memorial Hospital in Louisiana. This litigation first began about a decade ago when LCMH brought suit against CorVel in Louisiana,[21] alleging a violation of Louisiana law, which by its own terms has no application outside that state's boundaries.[22] Moreover, the parties agree that there is no difference between Delaware and Louisiana regarding construing contracts. For example, they agree that all potentially applicable state laws provide that coverage provisions should be construed broadly and exclusions should be construed narrowly.

The Dissent maintains that Delaware law applies notwithstanding the absence of a choice of law provision in the insurance policy. While the parties may have agreed for purposes of this appeal that Delaware law applies to the construction of the

---

[21] *See CorVel Corp. v. Sw. La. Hosp. Ass'n*, 2007 WL 594904 (W.D. La. Feb. 21, 2007) (ordering the parties to enter arbitration for statutory claims under La. R.S. § 40:2203.1, and discussing the filing of *Sw. La. Hosp. Ass'n. d/b/a Lake Charles Mem'l Hosp. v. CorVel*).

[22] La. R.S. § 40:2203.1(A) ("Except as otherwise provided in this Subsection, the requirements of this Section shall apply to all preferred provider organization agreements that are applicable to medical services rendered in this state and to group purchasers as defined in this Part. The provisions of this Section shall not apply to a group purchaser when providing health benefits through its own network or direct provider agreements or to such agreements of a group purchaser.").

14

policy, they disagree on which state's law controls the central question of how to characterize the judgment obtained in the Louisiana Litigation.

The Appellants contend that the Louisiana statute controls how the judgment is characterized. The Delaware Superior Court agreed as evidenced by its statement that "while the Court will apply Delaware law to interpret the insurance contracts, Louisiana law will be applied regarding the penalty issue, as this Court must examine a Louisiana Statute."[23] However, the Superior Court erred when it then applied common law principles in answering this question, rather than Louisiana's civil law approach that was foreshadowed in the *Gunderson* decision. Under civil law, priority is given to statutes and codes over common law jurisprudence.[24] "Civil law codes provide the core of the law-general principles[, which] are systematically and exhaustively exposed in codes[,] and particular statutes complete them."[25] Quite simply, in Louisiana, if the statute does not characterize the damage award entered as a "penalty," then it is not a "penalty" under Louisiana law.[26]

The Dissent refuses to accept the Louisiana court's construction of its own

---

[23] *Homeland Ins. Co. v. CorVel Corp.*, 2013 WL 3937022, at *10 (Del. Super. Jun. 13, 2013).
[24] *See generally* William Tetley, *Mixed Jurisdictions: Common Law v. Civil Law (Codified and Uncodified)*, 60 La. L. Rev. 677, 701-05 (2000).
[25] *Id.* at 703 (internal citations omitted).
[26] *See Williams v. SIF Consultants of Louisiana, Inc.*, 133 So.3d 707, 714 (La. Ct. App. 2014) (explaining how "[t]he language of La. R.S. § 40:2203.01 denotes that a violator is subject to pay 'damages' and includes no language regarding penalties").

statute. It rejects Louisiana's civil law approach as tautological, and instead, applies common law interpretation to the Louisiana statute to determine whether damages under La. R.S. § 40:2203.1(G) constitute "penalties." We submit that we should defer to the Louisiana court's civil law approach in the construction of its own statute.

Finally, we acknowledge that the Superior Court did not have the benefit of the Louisiana trial and appellate court's decisions in the *Williams* Litigation when it rendered its June 13, 2013, opinion and order. But given our *de novo* review, we will exercise comity in favor of our sister state, Louisiana, and, accordingly, hold that Louisiana's interpretation of its own statute is the correct interpretation.

## III. CONCLUSION

Accordingly, the matter is **REVERSED** and **REMANDED** for further proceedings consistent with this Opinion.

**STRINE**, Chief Justice, dissenting, with **BOUCHARD**, Chancellor, joining:

We share the Majority Opinion's desire to respect principles of comity and to avoid conflicting rulings. We respectfully dissent, however, from the Majority Opinion's view that by reversing the Superior Court's careful determination of the insurance coverage issues properly before it, our Court would be failing to accord comity to our esteemed judicial colleagues in Louisiana. The record is clear that the Superior Court rendered its decision on coverage *well before* the Louisiana trial court issued its ruling on that same issue.[27] And unlike the Louisiana Court or the Majority Opinion, the Superior Court recognized that the proper analysis to determine coverage under a contract starts with the language of the contract itself. This case thus does not depend principally on the interpretation of a Louisiana statute, but instead turns on the meaning of a contract that the parties to this appeal do not dispute should be interpreted based on Delaware contract law principles.

The issues at stake in this case and its companion, *First Health v. Chartis*, make little sense without understanding the full context behind this appeal. The underlying claims for which insurance coverage was sought arise of the so-called

---

[27] Indeed, the Louisiana trial court's ruling referenced the earlier Delaware decision. *Compare Homeland Ins. Co. and Executive Risk Specialty Ins. Co. v. CorVel Corp.*, 2013 WL 3937022 (Del. Super. June 13, 2013) [hereinafter Superior Court Opinion], *with Williams v. SIF Consultants of Louisiana, Inc.*, 2013 WL 7330225 (La. Dist. Ct. July 29, 2013).

17

PPO industry. A PPO, short for Preferred Provider Organization, essentially acts as an intermediary between health insurance companies and medical providers, including hospitals and individual doctors. The PPO creates a network of providers who agree to receive a reduced payment for treating patients covered by the insurers.

This case and *First Health's* arose from litigation brought by multiple groups of medical providers in Louisiana alleging that a number of PPO owners and operators, including CorVel and First Health, were violating La. R.S. § 40:2203.1, the "PPO Act," by improperly discounting payments for medical services without providing adequate notice to providers. The Act requires that before PPOs can discount payments to health care providers, either the patient must present a benefit card identifying the PPO at the time of service or the provider must agree in writing to receive the discounted rate.[28] The provider plaintiffs alleged that the PPOs had failed to provide the required notice for services provided to workers' compensation patients. The plaintiffs sought the remedies established in Section G of the Act: "damages payable to the provider of double the fair market value of the medical services provided, but in no event less than the greater of fifty dollars per day of noncompliance or two thousand dollars, together with attorney fees to be determined

---

[28] La. R.S. § 40:2203.1(B)-(C).

by the court."[29]

The cases now before us are one step removed from those underlying claims. They focus on a different but related issue; namely, whether the PPOs' insurers owe the PPOs reimbursement for the medical providers' claims.

CorVel faced legal action for allegedly discounting payments in violation of the PPO Act from two sets of providers. First, Lake Charles Memorial Hospital brought a class arbitration against CorVel in 2006.[30] While that case was pending, another plaintiff, George Raymond Williams, M.D., sued PPO owners and operators on behalf of the same class of providers in a Louisiana trial court (the "*Williams* litigation").[31] CorVel was eventually added as a defendant to that suit. Under Louisiana law, plaintiffs can pursue claims directly against insurers in certain circumstances.[32] Accordingly, CorVel's two insurers, Homeland and Executive Risk, were also named as defendants. Because the Lake Charles arbitration and the *Williams* litigation involved identical claims on behalf of the same class of providers

---

[29] La. R.S. § 40:2203.1(G).

[30] Lake Charles Memorial Hospital initially filed claims with the Louisiana Department of Labor Department of Workers' Compensation, but CorVel filed suit in Louisiana federal district court to compel arbitration in accordance with the parties' contract.

[31] *George Raymond Williams, MD. v. SIF Consultants of Louisiana, Inc.*, Dkt. No. 09-C-5244-C, 27th Judicial District Court, Parish of St. Landry.

[32] *See* La. R.S. § 22:1269(B)(1). That is, Louisiana law subjects an insurer who has no contractual relationship with the tort plaintiffs to a lawsuit based on the insurance company's policy with the tort defendant.

(the "Provider Plaintiff Class"), CorVel was able to resolve both actions with a global settlement for $9 million and an assignment of its insurance rights, which the Louisiana District Court approved in November 2011. But both Homeland and Executive Risk remained parties to the litigation. Put plainly, what CorVel did was to pay $9 million and then unleash the Provider Plaintiff Class to proceed directly against its insurers, Homeland and Executive Risk, as if the Provider Plaintiff Class had the same contractual rights as an insured as CorVel.

A separate set of providers brought suit against another group of PPO owners and operators, including First Health, in 2004.[33] First Health eventually settled with that plaintiff class (the "Settlement Class") for $150.5 million and an assignment of its insurance rights.[34] That is, yet another PPO defendant paid money and then gave the medical provider plaintiffs the right to go directly against their insurers as an assignee.

Both CorVel and First Health had multiple layers of insurance coverage under Errors & Omissions policies at the time of the alleged wrongdoing that they contend should cover the underlying claims. As noted, CorVel's coverage was provided by Executive Risk and Homeland; First Health's by four different companies, including

---

[33] *Gunderson v. F.A. Richard & Assoc.*, 2005 WL 5468586 (La. Dist. Ct., June 23, 2005).
[34] *See Gunderson v. F.A. Richard & Assoc.*, No. 2004-2417 (14th Jud. D.C., Parish of Calcasieu, State of La., May 27, 2011).

Chartis. In September 2009, one of First Health's insurers filed suit in the Delaware Superior Court, seeking a declaration that it had no duty to indemnify First Health under its policy for any claims related to the Louisiana litigation. After First Health settled that litigation, in part by unleashing the plaintiff class to sue its insurers under an assignment, the Settlement Class was added to the Delaware action against First Health as the real party in interest.

The Settlement Class moved for partial summary judgment on the issue of coverage on April 3, 2012, contending that the underlying claims constituted damages, which were covered under the contract. Chartis agreed that there were no material issues of fact to be decided, and cross-moved for partial summary judgment, contending that the claims were instead for penalties, which were excluded.[35] The Superior Court held a hearing on the motions on June 13, 2012, and issued an opinion denying the Settlement Class' motion and granting Chartis' motion for partial summary judgment on May 7, 2013. After conducting a thorough analysis of the insurance contract at issue, the Superior Court found that the policies were unambiguous, and the providers' claims under the PPO Act constituted penalties, not

---

[35] At that point, Chartis was one of three defendant insurance companies, but the other two eventually settled with the Settlement Class.

damages, and were therefore not covered.[36]

Litigation between CorVel and its insurers moved along a parallel track. In January 2011, Homeland brought a claim in the Delaware Superior Court seeking a declaration that the underlying claims for violations of the PPO Act were not insurable losses under its policy because they were penalties, not damages. Executive Risk was granted leave to intervene. Both insurers moved for partial summary judgment, arguing that there were no material facts in dispute.[37] Unlike in First Health's case, CorVel opposed both motions and argued that there were material facts remaining to be decided. Focusing on the terms used by the PPO Act rather than the language of the policies at issue, CorVel argued that under Louisiana law, the medical providers' claimed remedies were damages, not penalties. But CorVel claimed that, at a minimum, the policy exclusions were ambiguous, and thus summary judgment was inappropriate. The Superior Court heard arguments on January 31, 2013, and issued its opinion granting the insurance companies' motions on June 13. Just as in First Health's case, the court carefully analyzed the relevant insurance policies and determined they were unambiguous in excluding the underlying claims as penalties.[38]

---

[36] *Executive Risk Specialty Ins. Co. v. First Health Group Corp.*, 2013 WL 1908664 (Del. Super. May 7, 2013).

[37] Executive Risk moved for summary judgment "on the issues of penalty, restitution, and contract" on Aug. 29, 2012; Homeland moved for partial summary judgment in the same action on the same day.

[38] *See* Superior Court Opinion.

22

The Settlement Class and CorVel then both appealed to this Court.

Back in Louisiana, on May 24, 2014, after the Delaware Superior Court had issued its decision in First Health's case, but while the decision in CorVel's case was pending, the Provider Plaintiff Class moved for partial summary judgment against Executive Risk in the *Williams* litigation. Although technically the Provider Plaintiff Class is a separate party from CorVel, they share at least some of the same attorneys, and there is no question that they have acted in coordination throughout this litigation. Likewise, CorVel and the First Health Settlement Class have the same attorneys and their briefing on appeal to this Court was substantively identical.

After the Delaware Superior Court issued its June 13 decision in CorVel's case, granting summary judgment to Executive Risk and Homeland, the Louisiana trial court in *Williams* held a hearing on the Provider Plaintiff Class' motion on June 28. Rather than defer to the Delaware Superior Court's well-reasoned rulings on the identical coverage issues, the Louisiana court granted the motion for summary judgment on July 29, holding that under the PPO Act, the remedies available to providers were damages, not penalties. The Louisiana Third Circuit Court of Appeal affirmed the trial court's ruling on February 26, 2014.[39]   At that point, Executive

---

[39] *Williams v. SIF Consultants of Louisiana, Inc.*, 133 So.3d 707 (La. Ct. App. 2014). The Louisiana Appeals Court's decision references the earlier Delaware ruling as evidence that the plaintiff class' motion for partial summary judgment was ripe for adjudication, but does not otherwise address

23

Risk settled with the Provider Plaintiff Class and was dismissed from CorVel's appeal then pending before this Court.

Without quibbling in any way with the Louisiana Court's description of the Louisiana statute that apparently motivated its decision on the relevant coverage issues, we still find it impossible to reverse the Delaware Superior Court in the appeal pending before this Court. The reasons for that are simple: the Superior Court did not ignore principles of comity or commit any error of contract law. As to the first issue—comity—the Superior Court considered an issue properly put to it in advance of any requested ruling on that issue by the Louisiana trial court. As to the second, the Superior Court did not understand the Louisiana statute to operate any differently than the *Williams* court did. But the Superior Court, unlike the *Williams* court or the Majority Opinion, gave meaning and effect to the core contractual terms the parties had agreed to. The Superior Court's legal conclusions on that score were well-supported by respected authority,[40] applying relevant principles of contract

---

Executive Risk's claim that the Louisiana trial court's ruling directly contradicted a previous judgment that should have had preclusive effect. *See id*.

[40] *See, e.g.*, *Katz v. Oak Industries*, 508 A.2d 873, 880 (Del. Ch. 1986) (quoting Corbin on Contracts (Kaufman Supp. 1984), § 570) ("If the purpose of contract law is to enforce the reasonable expectations of parties induced by promises, then at some point it becomes necessary for courts to look to the substance rather than to the form of the agreement, and to hold that substance controls over form.").

interpretation that are embraced by our courts and by most jurisdictions.[41]

The Superior Court's analysis was faithful to the text of La. R.S. § 40:2203.1, but properly recognized that the label the Louisiana statute used did not determine whether the substance of what the underlying medical provider claimants obtained were "damages" within the terms of the insurance contract-which would be covered—or "penalties"—which would not. The meaning of terms in insurance policies like the one involved here have to govern the operation of companies doing business in many jurisdictions. As a result, the claims that arise under various jurisdictions must be analyzed to determine whether they fall within the insurance contract's coverage or within excluded categories. That requirement of proper contract analysis does not change, regardless of whether the jurisdiction takes a common law or civil law approach in interpreting its statutes.

In conducting the appropriate *contractual* analysis, it is important that the nature of the underlying claim and the law governing it be understood. But the dispositive question of law is what the contractual terms mean, which here the parties do not dispute is governed by Delaware, not Louisiana, law.[42] In other words, the

---

[41] *See, e.g.*, *ConAgra Foods, Inc. v. Lexington Ins. Co.*, 21 A.3d 62, 68 (Del. 2011) ("This Court has adopted traditional principles of contract interpretation.").

[42] The insurance contract at issue did not include a choice of law clause. Although there were several plausible contenders for which state's law should govern the interpretation of the contract, the Superior Court found that there was no conflict between any of the possible state laws and therefore applied the law of the forum state, Delaware. CorVel did not challenge that determination on appeal.

issue is not what a state's particular statute calls the remedy, or how that state's courts would interpret the statute; the question is whether the remedy afforded by the statute in fact amounts to covered damages or excluded penalties as those terms are used in the parties' contract. In all controversies arising under the policy, regardless of the location of the underlying claim, the contract definition governs. The *Williams* decision ignored that reality and made no attempt to give any weight to the contract or even consider the Superior Court's careful ruling on that subject. In doing so, the Louisiana Court failed to give comity to our state.[43]

The Majority Opinion, like the *Williams* court's decision, does not point to any errors in the Superior Court's analysis of the contract at issue. That is because, as the Superior Court found, the plain language in the contract is unambiguous. CorVel's policy with Homeland defines "loss" as:

> any monetary amount which an Insured is legally obligated to pay as a result of a Claim. Loss shall include . . . punitive, exemplary or multiplied damages where insurable by law; provided, that the law of the jurisdiction most favorable to the insurability of punitive damages shall control the insurability of such punitive damages . . . .

---

We note that it would aid in our resolution of coverage issues, which are frequently before this Court, if insurance contracts more routinely included choice of law provisions so that the contracting parties themselves could decide upfront whose law should govern.

[43] *See, e.g.*, Majority Opinion at 9 (quoting *Columbia Cas. Co. v. Playtex FP, Inc.*, 584 A.2d 1214 (Del. 1991) ("Comity permits one state to give effect to the laws of a sister state, not out of obligation, but out of respect and deference.").

> ***Loss shall not include***: (i) fines, ***penalties*** or taxes; provided that (A) punitive damages shall not be deemed to constitute fines, penalties or taxes for any purpose herein, and (B) Loss shall include fines and penalties imposed under the Health Insurance Portability and Accountability Act or in Claims for Antitrust Activity. . . . [44]

The policy thus makes clear that penalties are not covered, unless they are penalties related to "Antitrust Activity."[45] CorVel's arguments about the proper way to interpret insurance coverage or exclusions of coverage are therefore irrelevant; the only relevant question is whether the underlying claims are for penalties.

As the Superior Court properly determined, when the language in a contract is "clear and unambiguous," we should give it "its ordinary and usual meaning."[46] Black's Law Dictionary[47] defines penalty as "a sum of money exacted as punishment for either a wrong to the state or a civil wrong (as distinguished from compensation for the injured party's loss). Though [usually] for crimes, penalties are also sometimes imposed for civil wrongs."[48] A civil penalty is defined as a "fine assessed

---

[44] App. to CorVel Opening Br. at 486-87 (emphasis added).

[45] If the underlying claims were for antitrust-related penalties, they could also be covered under the unambiguous terms of the policy. But CorVel did not challenge the Superior Court's finding that the claims asserted in the underlying litigation did not constitute antitrust activity.

[46] *See O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 288 (Del. 2001).

[47] As the Superior Court noted, dictionaries are an appropriate aid in discerning ordinary meaning. *See* Superior Court Opinion at *13 (citing *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 738 (Del. 2006)) ("It is well-settled in Delaware that, in ascertaining the meaning of words not defined in a contract, courts 'look to dictionaries for assistance in determining the plain meaning of terms which are not defined in a contract.'").

[48] Black's Law Dictionary 562 (4th Pocket Ed. 2011).

for a violation of a statute or regulation." A statutory penalty is a "penalty imposed for a statutory violation; [especially], a penalty imposing automatic liability on a wrongdoer for violation of a statute's terms without reference to any actual damages suffered."[49] By contrast, damages are defined as "money claimed by, or ordered to be paid to, a person as compensation for loss or injury."[50] In the analogous contract law context, this Court has defined "penalty" as "a sum . . . that serves as a punishment for default, rather than a measure of compensation for its breach. In other words, it is an agreement to pay a stipulated sum upon breach, irrespective of the damage sustained."[51]

Here, it is not disputed that the remedy scheme under the PPO Act bears no relationship to any actual damages suffered by the medical provider plaintiffs. Indeed, the Act itself makes no effort to tie the remedy to actual losses; the "damages payable to the provider" are "double the *fair market value of the medical services provided*,"[52] not, for example, double the sum of the improper discount. The statute unambiguously imposes "automatic liability on a wrongdoer for violation of a statute's terms without reference to any actual damages suffered,"[53] or the dictionary

---

[49] *Id.*

[50] *Id.* at 195.

[51] *Delaware Bay Surgical Services, P.C. v. Swier*, 900 A.2d 646, 650 (Del. 2006) (quoting *S.H. Deliveries v. TriState Courier & Carriage*, 1997 WL 817883, at *2 (Del. May 21, 1997)).

[52] La. R.S. 40:2203.1(G) (emphasis added).

[53] *Id.*

definition of a statutory penalty.

In making its determination of coverage based on the contract at issue in this case, the Superior Court was respectful of Louisiana authority, including the Louisiana Supreme Court and the U.S. Court of Appeals for the Fifth Circuit,[54] and its understanding of the statute accords with how other courts in Louisiana have viewed the remedies available.[55] But contrary to the Majority Opinion, the Superior Court did not rely on these cases to interpret the statute as a matter of common law; rather, it cited Louisiana precedent as evidence to support its understanding of how the statute operated and whether the statute imposed penalties within the meaning of the term used in the parties' contract. That is, what the Superior Court properly did was to interpret an insurance contract's language, using traditional tools of contract interpretation. That was the judicial task the case assigned it. As the Superior Court found by reference to established authority,[56] the amount of damages set forth in the

---

[54] See, e.g., Superior Court Opinion at *18 (citing previous Louisiana decisions referring to the remedies under the statute as penalties).

[55] See, e.g., Gunderson v. F.A. Richard & Assoc., 44 So.3d 779 (La. Ct. App. 2010); Gunderson v. F.A. Richard & Assoc., 40 So.3d 418 (La. Ct. App. 2010) (characterizing the remedies under the PPO Act as "penalties"); see also Cent. La. Ambulatory Surgical Ctr., Inv. v. Rapides Parish Sch. Bd., 68 So.3d 1041 (La. Ct. App. 2010) (same); Touro Infirmary v. Am. Maritime Officer, 24 So.3d 948 (La. Ct. App. 2009) (same); see also Indian Harbor Ins. Co. v. Bestcomp, Inc., 2010 WL 5471005 (E.D. La. Nov. 12, 2010), aff'd, 452 F. App'x 560 (5th Cir. 2011) ("damages under section 40.2203.1(G) are excluded from the definition of damages under the policy . . . because the damages more than compensate an injured party for losses incurred due to lack of notice.").

[56] See Superior Court Opinion at *14 (citing Black's Law Dictionary 1247 (9th Ed. 2009), and Landis v. Marc Realty, 919 N.E.2d 300, 307 (Ill. 2009)).

statute bears no relationship to the harm suffered by any provider and thus was not of the kind considered "remedies" in the normal sense in which parties use term in contracts.[57]   Thus, the Superior Court did not rely on the fact that the Act awards remedies in a manner consistent with what other Louisiana courts have historically termed to be penalties, including in an important Louisiana Supreme Court case cited by the *Williams* court,[58] but instead noted that reality to corroborate its own correct reading of the Louisiana statute in relation to the parties' contract.

Had the Louisiana trial court itself showed comity by staying its hand after the Delaware Superior Court made the first ruling on the coverage issue and letting this case run its course to finality, the conflict the Majority Opinion is trying to avoid would not have arisen in the first instance.  Because the jurisdiction of our Superior Court was properly invoked, and the Superior Court issued its ruling first, the Provider Plaintiff Class' decision to pursue a new ruling on that same issue in another forum and the decision of the Louisiana courts to issue that ruling has caused the current logjam and any awkward comity issue that has arisen as a result.  The party

---

[57] *Homeland Ins. Co. and Executive Risk Specialty Ins. Co. v. CorVel Corp.*, C.A. No. 11C-01-089 (June 13, 2013), at 33.

[58] *See Williams v. SIF Consultants of Louisiana, Inc.*, 2013 WL 7330225 (La. Dist. Ct. July 29, 2013) (citing *International Harvester Credit Corporation v. Seale*, 518 So.2d 1039, 1042 (La. 1988) (describing legislative intent to award penalty or punitive damages "by either denoting the award a 'penalty,' modifying the term 'damages' with such language as 'punitive' or 'exemplary,' or *specifically awarding an amount in excess of the claimant's losses*") (emphasis added)).

that fairly prevailed on its motion for summary judgment has now lost all benefit from its trial court victory, and will receive no recompense from the defendant for its costs in obtaining that victory or for litigating this appeal. Those costs have been sunk for no purpose.

Moreover, by reversing on the grounds of comity to the Louisiana court's decision as to Executive Risk, we are subjecting Homeland to the additional costs of litigating the issues anew in Louisiana. When Executive Risk lost at the trial court and at the first appellate level in Louisiana, it settled with the Provider Plaintiff Class and left the decision in *Williams* unappealable.[59] But the ruling that the Provider Plaintiff Class obtained in that action should not run against Homeland, because the Class did not seek summary judgment against—and therefore did not obtain a judgment against—Homeland.[60]

Attempting to justify the Louisiana trial court's decision to render a ruling on the coverage issues more than six weeks after the Superior Court, the Majority Opinion asserts that litigation against CorVel had been in progress in Louisiana many years before the Delaware suit was filed against it. The fact of the matter, however,

---

[59] *See* Joint Motion and Order of Dismissal, *Williams v. SIF Consultants of Louisiana, Inc.*, No. 09-C-5244-C, 27th Jud. District Court, Parish of St. Landry, La. (July 22, 2014).
[60] *See* Charles Alan Wright, et al., 18 Fed. Prac. & Proc. Juris. § 4402 (2d ed.) (a non-party who was not fairly represented in a proceeding cannot justly be bound by principles of claim or issue preclusion).

is that Homeland was not named as a party in the *Williams* litigation in Louisiana until March 24, 2011—more than two months after it filed suit in the Superior Court on January 10, 2011. The principals may have been embroiled in litigation in Louisiana many years earlier, but the record plainly shows that the coverage issues under Homeland's policy were first put in issue in Delaware.

Although we respect and share the desire expressed in the Majority Opinion to avoid inconsistent rulings, we cannot embrace its solution. In our view, this is a situation in which our Superior Court did nothing wrong, but another state's courts' failure to show comity to our courts has unnecessarily caused the potential for inconsistent rulings and inefficiency. That might be a rational reason to stand down, as the Majority Opinion has concluded, but it is demonstrably unfair to Homeland. At a minimum, Homeland, as the party who has been victimized by its adversary's gamesmanship, should be reimbursed for its attorneys' fees and costs in obtaining a fair victory in our Superior Court and then having its victory taken away, not by a traditional reversal on the merits on appeal, but because this litigation had been rendered useless by collateral litigation to which this Court has now decided to defer. That compensation should include Homeland's fees and costs spent arguing this appeal. We also hope for the sake of Homeland that our judicial colleagues in Louisiana will look favorably upon Homeland's right to have the important coverage

32

issues it raised decided on the merits based on what its contract states.

For all these reasons, we respectfully dissent.